228 N.J. Super. 463 (1988)
550 A.2d 168
MARY TYLER, RAYMOND TYLER, SR., RAYMOND TYLER, JR., AND MARK TYLER, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-APPELLANT, AND RICHARD B. MATT AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 1988.
Decided October 31, 1988.
*464 Before Judges GAULKIN, BILDER and R.S. COHEN.
Martin, Crawshaw & Mayfield, attorneys for appellant (John R. Riordan, on the brief).
Gerald F. Miksis, attorney for respondents.
The opinion of the court was delivered by COHEN, R.S., J.A.D.
This case involves the nature and extent of the protection provided to the Tyler family by the underinsured motorist *465 provisions of an automobile insurance policy issued to plaintiff Mary Tyler.[1]
This is what happened. Plaintiffs, four members of the Tyler family, were injured in a collision with the auto of Russell Boggs. Boggs' insurance policy had a per-accident liability limit of $50,000. His carrier offered the entire policy in settlement. The Tylers accepted, dividing the available proceeds $19,000 to one, $16,500 to another, $9,500 to a third and $5,000 to the fourth injured plaintiff.
The Tylers' policy had uninsured and underinsured motorist coverage with limits of $15,000 per person and $30,000 per accident. The Tylers brought this action against Liberty Mutual and its agent, only one aspect of which is involved in this appeal. It is the claim by the two Tylers who settled with Boggs for $9,500 and $5,000 that, because Boggs had insufficient insurance to pay all of their damages, their policy provided $15,000 underinsured motorist protection for each of them against Boggs' negligence less the amounts they received from him in settlement. The trial court ruled that the policy provided such coverage. Defendant appealed, and we now reverse.
N.J.S.A. 17:28-1.1a requires all motor vehicle liability policies issued in New Jersey to include bodily injury coverage with limits of $15,000/$30,000 for injury to the insured by a uninsured motorist. See also N.J.S.A. 39:6A-14. In addition, carriers must offer as an option underinsured motorist coverage and further uninsured motorist coverage up to the policy's liability limits, but not more than $500,000 per accident. N.J.S.A. 17:28-1.1b.
A vehicle is underinsured when

*466 the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlement or judgment. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance bonds. [N.J.S.A. 17:28-1.1e].
The plain meaning of the statute is that underinsured motorist benefits are available if (and to the extent that) the tortfeasor's liability limits are lower than the limits of the underinsured motorist coverage contained in the plaintiff's policy. Here, the tortfeasor's liability limits were $25/50,000 while plaintiffs' underinsured motorist limits were $15/30,000. For that reason, plaintiffs' underinsured motorist coverage did not apply.
The statute produces the same result if there is one injured claimant or many, or if the amount of damages exceed the tortfeasor's liability limits, or even if multiple claims against one tortfeasor are, because of his liability limits, settled for amounts which are individually less than the underinsured motorist coverage available from the claimants' policy. A tortfeasor is not underinsured relative to plaintiffs' damages, or relative to the judgment or judgments against him, but rather relative to the limits of the underinsured motorist coverage purchased by or for the person seeking recovery.
Our decision is consistent with Longworth v. Van Houten, 223 N.J. Super. 174 (App.Div. 1988), where this court ruled that a claimant may recover under his own underinsured motorist coverage, less the full amount of the tortfeasor's liability limits, even if the claimant settled with the tortfeasor's carrier for less. There, plaintiff's underinsured motorist coverage was higher than the tortfeasor's liability coverage. A necessary corollary of the ruling, however, is that there is no recovery at all from the underinsured motorist coverage unless it has *467 higher limits than the liability coverage. See also Wert v. Picciano, 189 N.J. Super. 178 (Law Div. 1982).
Our decision is also consistent with Lick v. Dairyland Ins. Co., 258 N.W.2d 791 (Minn. 1977);[2]Thiry v. Horace Mann Mut. Ins. Co., 269 N.W.2d 66 (Minn. 1978); Connolly v. Royal Globe Insurance Co., 455 A.2d 932 (Me. 1983). See also Hoffman v. United States Auto Ass'n., 309 Md. 167, 522 A.2d 1320 (1987); Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (Fla. 1978); Vigneault v. Travelers Ins. Co., 118 N.H. 75, 382 A.2d 910 (1978); Rutherford v. Tennessee Farmers Mut. Ins. Co., 608 S.W.2d 843 (Tenn. 1980).
One further matter. Plaintiffs' motion for judgment was not orally argued. On the return day, the motion judge's law clerk wrote to counsel that the motion was granted on the moving papers and without opposition. The law clerk also noted that defendant had filed late opposing papers and:
Although recognizing the validity of some of the points raised by defendant, the court will not consider them due to the late submission. The original order will stand, however the rulings therein may be considered to be without prejudice.
When defendant moved for reconsideration, the law clerk wrote that there was no such procedure and said that the court had therefore denied the motion. The order entered by the court was not "without prejudice."[3]
The interpretation of the statute here involved was of consequence to the parties. To the extent that the ruling might have influenced later rulings of the Law Division, it was of consequence *468 also to the motoring public and the insurance industry. Such decisions should be made where possible on the merits. It is a mistaken exercise of judgment to close the courtroom doors to a litigant whose opposition papers are late but are in the court's hands before the return day for a motion which determines the meritorious outcome of a consequential lawsuit. "Swift justice demands more than just swiftness." Henderson v. Bannan, 256 F.2d 363, 390 (Potter Stewart, J., dissenting) (6 Cir.1958). Late filings of motion papers can be met with a variety of judicial responses afforded by existing court rules. Among them are sanctions designed to discourage late filings without determining the outcome of a case. See Audubon Volunteer Fire v. Church Const. Co., 206 N.J. Super. 405, 407 (App.Div. 1986); Automatic Washer Serv. v. Brunswick Burl., Inc., 153 N.J. Super. 343 (App.Div. 1977).
Reversed and remanded for the entry of judgment in favor of defendant.
NOTES
[1] Liberty Mutual Insurance Company was originally named defendant as issuer of the insurance policy. Late in the game, the parties agreed that the proper defendant was the New Jersey Automobile Full Insurance Underwriting Association, and not Liberty Mutual. The Association was therefore added as a defendant and the claim against Liberty Mutual was dismissed. The difference is of no consequence to our determination.
[2] The Minnesota statute was later amended. See Holman v. All Nation Ins. Co., 288 N.W.2d 244, 250-251 (Minn. 1980).
[3] Three things need saying about these communications. First, the law clerk was wrong in saying there was no procedure for trial court reconsideration. R. 1:7-4; 4:49-2. Second, we wonder at the concept of a decision made "without prejudice" which nevertheless determines the outcome of a case and is not subject to reconsideration. Third, we again call attention to our disapproval of the practice of delegating the announcing and explaining of judicial decisions to law clerks. Hungerford v. Greate Bay Casino Corp., 213 N.J. Super. 398, 402 (App.Div. 1986).