694 A.2d 1008

DIANA FRENCH, PLAINTIFF–APPELLANT, v. NEW JERSEY
SCHOOL BOARD ASSOCIATION INSURANCE GROUP, A COR-
PORATION; NEW JERSEY SCHOOL BOARD ASSOCIATION
INSURANCE GROUP, AN UNINCORPORATED ASSOCIATION;
HUDSON COUNTY AREA VOCATIONAL–TECHNICAL
SCHOOLS, DEFENDANTS–RESPONDENTS, AND JOHN DOE
CORP. 1 THROUGH 5, DEFENDANTS.

Argued February 3, 1997—Decided June 25, 1997.

*Alan L. Krumholz* argued the cause for appellant.

*Paul G. Witko* argued the cause for respondent (*Purcell, Ries, Shannon, Mulcahy & O'Neill,* attorneys; *David M. Hawkins,* of counsel).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns the rights and obligations of parties under an insurance endorsement defining an increasingly vexatious subject—underinsured motorist (UIM) benefits. Simply stated, UIM coverage provides to an insured a measure of added protection against the risk of being injured by a negligent driver having an inadequate limit of liability insurance to cover the extent of the insured's injuries. The question here is whether a bus driver from a school district, injured by an underinsured driver while operating a school district bus, may recover UIM benefits under the policy purchased by the school district to cover the bus, or whether she is limited to the amount of UIM coverage purchased under her personal automobile insurance policy.

I

On April 23, 1991, plaintiff, Diana French, was driving a school bus for her employer, Hudson County Area Vocational Technical School (Hudson). A taxi cab struck the school bus in the rear and caused severe injuries to Ms. French. She has

undergone multiple surgeries and has been unable to return to work since the accident. She brought an action in the Law Division against the taxi company, which ultimately settled for $25,000, the liability limits of the policy insuring the taxi. Plaintiff then sought benefits under the UIM coverage contained in the insurance policy issued to Hudson by the New Jersey School Board Insurance Group. That policy provided UIM coverage in the amount of one million dollars. At the time, plaintiff had personal automobile insurance through Allstate Insurance Company with UIM coverage in the amount of $25,000. Relying on our decision in *Aubrey v. Harleysville Insurance Companies,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995), the trial court held that any UIM recovery by plaintiff was limited to the $25,000 available under her personal Allstate policy; and that because no UIM coverage was created when that policy was compared with the tortfeasor's liability limit, summary judgment in Allstate's behalf was appropriate. The Appellate Division affirmed in an unreported opinion. We granted plaintiff's petition for certification, 146 *N.J.* 500, 683 *A.*2d 202 (1996). In order to qualify for UIM benefits under any UIM policy "insuring" the injured person, that person must demonstrate that the limits of the policy "held" by him or her are greater than the aggregate liability limits insuring the allegedly underinsured tortfeasor. We hold that when an automobile accident occurs in the course of employment, a policy "held" by a regular employee of a business enterprise includes the policy of the enterprise that covers the employee in the course of employment. We therefore reverse.

## II

Having been characterized as a "sleeping giant," *Green v. Selective Insurance Company,* 144 *N.J.* 344, 349, 676 *A.*2d 1074 (1996), and a "legal iceberg," Cynthia M. Craig and Daniel J. Pomeroy, *New Jersey Auto Insurance Law* § 26.1 at 339 (1997) (hereinafter Craig & Pomeroy), UIM insurance has assumed an ever-increasing importance in automobile-claims reparation. It

has also proved to be an infinitely complex and troublesome area for the bar and the insurance industry. In *Riccio v. Prudential Property & Casualty Insurance Company,* 108 *N.J.* 493, 498, 531 *A.*2d 717 (1987), the Court observed that the subject of uninsured (and by clear implication, underinsured) motorist coverage, which the parties had characterized as "really quite simple," was anything but that. Having declined the opportunity in *Riccio* to "plumb the intricacies" of this area of insurance law, *ibid.,* we now undertake to review again the basic principles of UIM coverage. Our discussion of these principles is not intended to be a definitive digest of the law, *see* Craig & Pomeroy, *supra,* but only to provide the background for our decision.

UIM coverage is optional first party coverage insuring the policy holder, and others, against the possibility of injury or property damage caused by the negligent operation of a motor vehicle whose liability insurance coverage is insufficient to pay for all losses suffered. The nature of the coverage is defined by *N.J.S.A.* 17:28–1.1e. The fact that it must be offered by insurers as a mandatory option is dictated by *N.J.S.A.* 17:28–1.1b. *N.J.S.A.* 17:28–1.1c prohibits the stacking of UIM benefits on either an intra-policy (*i.e.,* where an "insured" in a single policy that covers many cars may recover under UM coverage of *each* car) or inter-policy (*i.e.,* recovery from more than one policy for injuries sustained in a single accident) basis. The foregoing are the statutory sources of the coverage.

 This coverage was first offered as a mandatory option in connection with the 1983 Legislation that adopted it (Section 1 of *L.*1983, *c.* 362). The Appellate Division has described UIM coverage as a "stop gap measure" that essentially creates a framework within which one can purchase as much UIM protection as is desired, given the purchaser's individual situation, that is, what coverage he or she can afford or desires. *See, e.g., Bauter v. Hanover Ins. Co.,* 247 *N.J.Super.* 94, 96, 588 *A.*2d 870 (App.Div.) (holding that purpose of *N.J.S.A.* 17:28–1.1b, c, and e was to offer an insured protection up to limit of UIM coverage purchased, not

to guarantee that insured would be made "whole again"), *certif. denied*, 126 *N.J.* 335, 598 *A.*2d 893 (1991); *Tyler v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 228 *N.J.Super.* 463, 466, 550 *A.*2d 168 (App.Div.1988) (holding that tortfeasor is not underinsured relative to UIM insured's damages, or relative to judgment or judgments against tortfeasor, but rather relative to limits of UIM coverage purchased by or for person seeking recovery); *Wolfe v. Sperling Agency, Inc.*, 228 *N.J.Super.* 428, 434, 549 *A.*2d 1275 (Law Div.1988) (rejecting argument advanced by UIM claimant that basic legislative intent leading to enactment of *N.J.S.A.* 17:28–1.1e was to provide blanket, complete coverage to persons injured by motor-vehicle accidents). Thus, the following principle has been found to flow from the 1983 amendments to *N.J.S.A.* 17:28–1.1, particularly section e: A motor-vehicle tortfeasor is "underinsured" only when all the liability coverage insuring his or her purportedly underinsured vehicle *is less than* the UIM benefits "held" by the UIM claimant. *See N.J.S.A.* 17:28–1.1e; *Prudential Prop. & Cas. Ins. Co. v. Johnson*, 238 *N.J.Super.* 1, 568 *A.*2d 1193 (App.Div.1989); *Nikiper v. Motor Club of Am. Cos.*, 232 *N.J.Super.* 393, 557 *A.*2d 332 (App.Div.), *certif. denied*, 117 *N.J.* 139, 564 *A.*2d 863 (1989); Craig & Pomeroy, *supra*, Chapter 27:4–1 at 352.

■ Once that threshold analysis results in a potential UIM claim (that is, the UIM limits "held" by the injured are in excess of the total liability limits covering the allegedly underinsured tortfeasor), recovery against the UIM coverage results only when the insured demonstrates that his or her damages exceed the liability limits involved. The principle was perhaps best articulated in *Tyler*, where the court observed:

> The plain meaning of [*N.J.S.A.* 17:28–1.1e] is that underinsured motorist benefits are available if (and to the extent that) the tortfeasor's liability limits are lower than the limits of the underinsured motorist coverage contained in the plaintiff's policy.
>
> The statute produces the same result if there is one injured claimant or many, or if the amount of damages exceed the tortfeasor's liability limits, or even if multiple claims against one tortfeasor are, because of his liability limits, settled for amounts which are individually less than the underinsured motorist coverage available from

the claimants' policy. A tortfeasor is not underinsured relative to plaintiff's damages, or relative to the judgment or judgments against him, but rather relative to the limits of the underinsured motorist coverage purchased by or for the person seeking recovery.

[228 *N.J.Super.* at 466, 550 *A.*2d 168.]

*See also Calabrese v. Selective Ins. Co.,* 297 *N.J.Super.* 423, 688 *A.*2d 606 (App.Div.1997) (discussing effect of split limits on the analysis).

■■■ To those principles we add that when the UIM claimant passes the threshold analysis set forth above but fails to exhaust in settlement the liability policy limits insuring the underinsured tortfeasor, the full policy limits will still serve as the appropriate setoff against the UIM coverage. See *N.J.S.A.* 17:28–1.1e; *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div. 1988). However, when multiple claimants exhaust all of the liability limits available to an underinsured tortfeasor and when a claimant "holds" a UIM policy that creates coverage when compared with the underinsured tortfeasor's total liability limits, the amount that the injured claimant is able to recover from the liability policy (as opposed to the liability policy limit itself) serves as the appropriate setoff. *See Filippatos v. Selective Ins. Co.,* 241 *N.J.Super.* 236, 237, 574 *A.*2d 1002 (App.Div.1990).

■■■ With those basic principles in mind, we move to the issues projected by this appeal, which of necessity require that we resort, at length, to the text of *N.J.S.A.* 17:28–1.1e:

For the purposes of this section, (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle. Underinsured motorist coverage shall not apply to an uninsured motor vehicle. A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy *held* by the person seeking that recovery. A motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underin-

sured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds. [Emphasis added.]

Obviously, the statute expresses no mandate regarding the persons that are to be insured under the standard UIM endorsement. Nevertheless, in establishing the key threshold analysis to determine the existence of a potential UIM claim in the first instance (again, comparing the UIM limits with the tortfeasor's liability limits), the statute directs that the potential UIM claimant is to use the UIM policy "held" by that person. As described in *Aubrey, supra*, the most reasonable interpretation of the word "held," in the statutory context of *N.J.S.A.* 17:28–1.1e, is that it pertains to the UIM policy actually purchased by or purchased for the benefit of the prospective UIM claimant. 140 *N.J.* at 404, 658 *A.*2d 1246.

The plaintiff in *Aubrey* was injured while she was driving a Tercel automobile loaned to her by the dealer from whom she had contracted to purchase the car. The automobile policy still in force on her old car provided UIM limits of $15,000 and liability limits of $15,000 for injury to one person and $30,000 for injuries to more than one person. While driving the Tercel, Aubrey sustained serious personal injuries in a three-car accident. The insurers for the other drivers settled Aubrey's claim by paying their policy limits, $25,000 and $15,000, for a total of $40,000. The dealer's car that Aubrey was driving at the time of the accident was insured under a policy issued by Harleysville Insurance Company with UIM coverage of $1 million. Aubrey claimed UIM benefits as an insured under that policy. We held that because the automobile dealer's policy contained a step-down provision that reduced the liability coverage available to the dealer's customers to $15,000, and because the "parity" provision of *N.J.S.A.* 17:28–1.1b limits UIM coverage to the amount of the insured's liability coverage, the UIM benefits available to Aubrey did not exceed the $15,000 that was available under her UIM coverage. We reasoned that there is a distinction "between an exclusion from the class of covered permissive users and a limitation on the

coverage." 140 *N.J.* at 407, 658 *A.*2d 1246. Consequently, Harleysville's policy, which merely limited coverage available to Aubrey, was valid. We concluded that "[l]imiting UIM coverage to the amount chosen by the insured comports with the insured's reasonable expectations. Under *N.J.S.A.* 17:28–1.1b, UIM coverage is discretionary, not mandatory." *Id.* at 404, 658 *A.*2d 1246. Because UIM insurance is "personal to the insured," we said that the "right to recover UIM benefits depends on the UIM limits chosen by the insured. Recovery does not depend on the limits of other UIM policies." *Id.* at 403, 405, 658 *A.*2d 1246.

## III

### A.

As this case illustrates, we did not expect or intend that the amount of liability held under a personal insurance policy would be the sole criterion or litmus test for determining UIM coverage issues. In that regard, we note the problem that *Aubrey* has apparently been interpreted by some courts as establishing the UIM policy purchased by the injured person as not only the policy of "comparison" (for the purpose of gauging whether a UIM claim exists in the first place) but also as the only UIM policy that the injured person has resort to once that threshold test is met. That is simply too broad a reading. Indeed, other portions of the statute and the standard uninsured/underinsured motorist endorsement approved by the Commissioner of Insurance plainly envision one potentially being able to secure benefits under more than one UIM endorsement. In that regard, *N.J.S.A.* 17:28–1.1c states in pertinent part:

> Uninsured and underinsured motorist coverage provided for in this section shall not be increased by stacking the limits of coverage of multiple motor vehicles covered under the same policy of insurance nor shall these coverages be increased by stacking the limits of coverage of multiple policies available to the insured.

Obviously, that provision contemplates one being an insured under multiple UIM policies, as there would be no reason to prohibit policy stacking if one could have access to benefits under only the

UIM policy one purchased, as described above. Moreover, the standard UM/UIM endorsement approved for use in personal New Jersey automobile insurance policies defines "insured," for the purposes of UIM protection, as follows:

1. You or any "family member";
2. Any other person "occupying your covered auto";
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

Plainly, therefore, both the statute and the standard UIM endorsement contemplate situations in which one could conceivably receive benefits under more than one UIM policy. That issue, however, must be viewed as distinct from the one posed by focusing on the policy one "holds," for the purpose of gauging the applicability of UIM insurance in the first instance.

## B.

Rather than to have created a litmus test, we intended the *Aubrey* principle to be an indication of the fair expectations of parties when there are no surer indicators of policy language or statutory policy that would provide direction concerning when a UIM policy is "held" by a claimant. If the only trigger to UIM coverage were the limits "chosen" by an injured person, a broad class of victims such as those who did not own or did not drive automobiles would be entirely excluded from UIM coverage. They have "chosen" no coverage against which to compare the tortfeasor's liability coverage. Certainly the Legislature could not have intended that such persons would receive no UIM benefits under the policy of a host vehicle. *See Di Ciurcio v. Liberty Mut. Ins. Co.*, 299 *N.J.Super.* 426, 691 *A.2d* 396 (1997) (holding son who had not "chosen" UIM benefits covered by father's policy). In short, a policy "held" by a claimant is not always a policy purchased by a claimant. Others may provide coverage for the claimant. *See Tyler, supra,* 228 *N.J.Super.* at 466, 550 *A.2d* 168 (holding that tortfeasor is considered underinsured "relative to the

limits of the underinsured motorist coverage *purchased by or for the person seeking recovery* "). (Emphasis added.)

We note that even after the *Aubrey* decision, insurance companies seemed to assume that an employer's UIM policy would cover an employee for work-connected injuries, although there might be a dispute about whether the employer's policy or the personal policy would be primary. *American Reliance Ins. Co. v. American Cas. Co.*, 294 *N.J.Super.* 238, 683 *A.2d* 205 (App.Div.1996). While the *French* case was on appeal to us, a similar case reached the Appellate Division, *Cook–Sauvageau v. PMA Group*, 295 *N.J.Super.* 620, 685 *A.2d* 978 (App.Div.1996). That case, too, involved potential UIM coverage for an employee under an employer's policy. That court wrote:

Rejecting an overly expansive reading of *Aubrey* similar to the one urged by [the employer's UIM carrier], we held in *Taylor v. National Union Fire Ins. Co.*, 289 *N.J.Super.* 593, 674 *A.2d* 634 (App.Div.), *certif. denied*, 145 *N.J.* 376, 678 *A.2d* 716 (1996), that an employee who was injured while operating a car provided for his personal use as part of his compensation package, which was insured under the employer's business automobile policy, was entitled to the UIM benefits provided thereunder. Although the purchaser of the business automobile policy was the employer, we concluded that the injured employee was entitled to full coverage under the policy because "[the employee] was a specifically named insured for that specific car." *Id.* at 599, 674 *A.2d* 634. We reached this conclusion even though the employee also maintained a personal automobile policy which provided coverage for two family automobiles.

Although Cook–Sauvageau was not specifically named in [the employer's] business automobile policy, it is as clear in this case as it was in *Taylor* that the essential risk for which [the carrier's] business automobile policy was intended to provide coverage was an accident involving an employee's operation of one of the employer's vehicles. In fact, as the court observed in *Murphy v. Milbank Mut. Ins. Co.*, 438 *N.W.2d* 390, 395 (Minn.Ct.App.1989), "[t]he employees of an insured corporation are in actuality the objects of the corporation's automobile liability coverage." Furthermore, the UIM benefits are an integral part of this coverage. Under [the UIM] policy, UIM benefits are provided to any person " 'occupying' a covered 'auto,' " which certainly includes an employee of the insured who is injured while operating one of its vehicles during the course of employment. Although an employee's personal automobile policy also may provide UIM coverage for such an accident, the "Other Insurance" clause of the standard automobile liability policy would make the UIM coverage provided by the employer's policy "primary" and any coverage provided by the employee's personal policy only "secondary." *See American Reliance Ins. Co. v. American Casualty Co.*, 294 *N.J.Super.* 238, 683 *A.2d* 205 (App.Div.1996); *Royal Ins. Co. v. Rutgers Casualty Ins. Co.*, 271

*N.J.Super.* 409, 638 *A.*2d 924 (App.Div.1994). Consequently, it would be manifestly inconsistent with the plain language of the UIM endorsement of [the carrier's] business automobile policy and with the reasonable expectations of both the employer and employee to deny the benefits of UIM coverage to an employee injured while operating one of the employer's vehicles during the course of employment.

[*Id.* at 626–27, 685 *A.*2d 978.]

We acknowledge that *Cook–Sauvageau* and *American Reliance* each involved an employee who, given the policy limits of the various liability and UIM policies involved, was able to assert a UIM claim either under his or her personal UIM policy or under the employer's policy through qualifying as a person entitled to receive benefits on the basis of "occupying" the employer's insured vehicle. In both of those decisions, therefore, the UIM claimant seeking to assert a claim for UIM benefits under the employer's policy had also passed the threshold test under the claimant's personal UIM policy. (In each case, the benefits under the employer's policy were greater than under the personal.) However, we believe that the Legislature clearly would have intended that the policy "held" by a claimant under *N.J.S.A.* 17:28–1.1e would include a policy provided for the claimant by an employer even if coverage under the personal policy of the employee were not triggered. *Taylor v. National Union Fire Insurance Company,* 289 *N.J.Super.* 593, 600, 674 *A.*2d 634 (App.Div.), *certif. denied,* 145 *N.J.* 376, 678 *A.*2d 716 (1996), stated:

[R]esearch has failed to disclose any holding among our sister states denying UIM coverage to an employee under an employer's business auto policy that includes endorsements adding the employee as the named insured of a designated covered vehicle provided the employee is injured while using that vehicle. To the contrary, that coverage is regularly and routinely afforded the employee, whether or not also extended to his family members, unless contradicted by express policy exclusions, not the case here.

The risks of driving a personal car from home to grocery store, soccer field, or church are qualitatively different from driving a bus on the Turnpike or Parkway. Employers and employees might most naturally contemplate greater coverage for greater risks. The language and reasoning of *Cook–Sauvageau* and *Tay-*

*lor* support that conclusion. We accept that analysis and reverse the judgment in this case in accordance with that reasoning.

## C.

In the course of deciding *Aubrey,* the Court disapproved of the holding in *Landi v. Gray,* 228 *N.J.Super.* 619, 550 *A.*2d 768 (App.Div.1988), *overruled by Aubrey, supra,* 140 *N.J.* 397, 658 *A.*2d 1246. In that case, the plaintiff, Dawn Landi, had been a passenger in an automobile when a friend accidentally drove it off the road into a tree, causing her serious injuries. Dawn had borrowed the automobile from its owner, her brother, Donald, and had then permitted her friend to drive it. Her friend had no automobile liability insurance except for $30,000 coverage as a permissive user under Donald's policy, which sum the carrier paid to Dawn. Dawn and Donald were members of their parents' household and the insurer had issued an $100,000/$300,000 policy to the plaintiff's mother insuring the mother's automobile. That policy provided underinsured motorist coverage of $100,000 to the mother and to her daughter as a resident of the mother's household. The policy, however, contained an exclusion that read in part: "Neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle ... [o]wned by or furnished or available for the regular use of you or any family member." *Id.* at 621, 550 *A.*2d 768. In effect, the insurance company said to the insured family member, "don't look to us for UIM benefits if it is another resident-member of your own family that owns the underinsured vehicle. You could have encouraged that family member to buy more insurance or perhaps have bought it yourself."

The trial court invalidated the *Landi* exclusion as contrary to public policy because it was repugnant to *N.J.S.A.* 17:28–1.1. The Appellate Division agreed, holding that once an insured has elected to purchase UIM coverage, the carrier may not cut back the statutory scope of such coverage by excluding vehicles owned by any member of the family from the policy definition of an underinsured motor vehicle. The Appellate Division relied on *Motor Club*

*of America Insurance Company v. Phillips,* 66 *N.J.* 277, 330 *A.*2d 360 (1974). In *Phillips,* the Court invalidated an excess-escape clause, finding it repugnant to the statute. *Id.* at 294, 330 *A.*2d 360. An excess-escape clause is a type of "other insurance" clause, also called a setoff, which limits an insured's recovery by amounts recovered either from other insurance policies (inter-policy setoff) or other coverages of the same policy (intra-policy setoff). *See generally,* 15A Couch on Insurance 2d § 56:32 (rev. ed.1988). It "purports to prohibit recovery on the UM coverage on the accident victim's own policy if [the victim] has recovered or has available recourse to the UM coverage of the vehicle [the victim] was occupying when injured (except to the extent of an excess in amount of coverage of the former over the latter)." *Phillips, supra,* 66 *N.J.* at 280, 330 *A.*2d 360. "[O]ther insurance clauses originated in property insurance to protect insurers from being required to pay double recoveries," and were later used by insurers in automobile policies to decrease or abolish duplicate coverage various insurers were required to supply when multiple policies applied to a claim. *Brown v. State Farm Mut. Auto. Ins. Co.,* 163 *Ariz.* 323, 326, 788 *P.*2d 56 (1989). The *Phillips* Court invalidated the excess-escape clause because it defeated "what was held to be a claimant's legitimate and statutorily-accorded right to the 'stacking' of UM coverage where fair compensation for the injury for which an uninsured motorist is responsible is in excess of the coverage provided by a single available UM endorsement." *Childs v. New Jersey Mfrs Ins. Co.,* 108 *N.J.* 506, 509, 531 *A.*2d 723 (1987). No comparable "statutorily-accorded right" exists here. (Parenthetically, the "anti-stacking" amendment to *N.J.S.A.* 17:28–1.1 effectively overruled *Motor Club.*)

The UIM statute provides that "uninsured motorist coverage shall be subject to the policy terms, conditions and exclusions approved by the Commissioner of Insurance." *N.J.S.A.* 17:28–1.1d. No similar provision governs the policy terms for underinsured motorist coverage. The different legislative concern for the two forms of insurance is that availability of uninsured motorist benefits affects all ratepayers of insurance (all auto insurance

companies pay a portion of their premiums into the Uninsured Motorist Fund), whereas the availability of UIM benefits affects only the parties insured under the contract.

> In appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the contract was made. Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning.... The parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute.
>
> [*Leader Nat'l Ins. Co. v. American Hardware Ins. Group*, 249 *Neb.* 783, 545 *N.W.*2d 451, 455 (1996) (citations omitted) (deciding issue similar to *Aubrey, supra*, 140 *N.J.* 397, 658 *A.*2d 1246).]

Our law is the same. *See Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 *N.J.Super.* 409, 419, 638 *A.*2d 924 (App.Div.1994) (stating "[i]t is fundamental that in the absence of a statutory prohibition to the contrary, an insurance company has a right to impose whatever conditions it desires prior to assuming its obligations").

■ So long as the terms and conditions of coverage are fairly disclosed, no public policy or statute prevents the exclusion of UIM coverage when it is the underinsured vehicle of the resident family member that causes the injury.

■ By the same token, as this case illustrates, no public policy or statute prevents an insurance company from providing greater coverage to an insured person than is provided under the personal insurance of that insured.

For example, no public policy or statute should prevent a parent from providing UIM coverage for a resident-child greater than the child might have on a personal auto so long as the risk is understood and accepted by the insurance company. After all, the parent is likely to bear the burden of any unreimbursed expenses and to empathize with the uncompensated suffering of a child. We note that the *New Jersey Auto Insurance Buyers Guide*, reprinted in the Administrative Code, describes Uninsured/Underinsured Motorist Coverage thus:

## Uninsured/Underinsured Motorist Coverage

### (Required by Law)

Despite New Jersey law, which requires auto insurance, many cars are not covered by insurance. Some motorists break the law. Many other motorists are residents of other states which do not require auto insurance by law.

Because these motorists can cause accidents, you are required to buy uninsured motorist coverage. This coverage does not benefit the uninsured driver. It will provide benefits to you, your *passengers or relatives living with you* if a motorist without insurance is legally liable for injuries to these persons or for damage to your car or its contents.

There are other motorists who have auto insurance coverage but with very low limits. When you buy uninsured motorist coverage above the minimum limits required by law, you are also provided coverage to protect you from those motorists who are underinsured. If you are in an accident caused by such a motorist, underinsured motorist coverage will pay damages up to the difference between your underinsured motorist coverage limit and the other driver's liability coverage limit.

[*N.J.A.C.* 11:3–15.6 (emphasis added).]

If the policy were intended to exclude UIM coverage for one's spouse or child, we would expect that intent to be clear. Like the head of a household, an employer will often wish to insure that the injuries of employees are fully compensated, if only to benefit from the employees' continued well-being. Conversely, an insurance company is not forbidden to limit UIM coverage for family members or employees who have other insurance.

However, when the intent of parties to the insurance contract to extend coverage to others is uncertain, the matter of personal choice may become the dominant theme. In a series of cases, the Appellate Division has

read *Aubrey* as standing for the principle that if a person is injured while fortuitously using or occupying a vehicle covered by a policy under which the person is not a named insured, that person's UIM recourse is defined by [the injured person's] "own" policy and not by the policy covering the fortuitously occupied vehicle or, indeed, any other policy.

[*Taylor, supra,* 289 *N.J.Super.* at 599, 674 A.2d 634 (citation omitted).]

### IV

Our function in construing these [UIM] policies of insurance, as with any other contract, is to search broadly for the probable common intent of the parties in an

effort to find a reasonable meaning in keeping with the express general purposes of the policies. In this pursuit, we cannot emphasize too strongly that when an insurance policy is clear and unambiguous ... the court is bound to enforce the policy as it is written. It is not the function of the court to make a better contract for the parties than they themselves have seen fit to enter into or to alter it for the benefit of one party and to the detriment of the other.

[*Royal Ins. Co., supra,* 271 *N.J.Super.* at 416, 638 *A.*2d 924 (citations and internal quotation omitted).]

In *Aubrey,* the plain language of the step-down provisions of the dealer's policy limited the available liability coverage and consequently the UIM coverage to the same amount as Aubrey's policy. Aubrey "held" no UIM coverage greater than the limits of liability held by the negligent operator. In *Landi,* the plain language of her mother's policy limited the UIM coverage available to Dawn when the operation of another family car caused her injuries. She thus "held" no UIM coverage greater than the tortfeasor's. In this case, the plain language of the policy and the undoubted common intent of the parties to the UIM contract is that the policy covers the bus driver as an employee of the school district. The language of the policy is unambiguous in this regard. The UIM endorsement covers anyone "occupying a covered auto." By whom is a policy of the fictitious being of a corporation "held" if not by corporate employees? Diana French thus "held" UIM coverage greater than the tortfeasor's liability coverage.

Policy drafters have either anticipated or can anticipate most of the recurring problems in this area. For example, the standard form of the 1996 insurance agreement on file with the Department of Insurance provides that if a person is not a named insured under a UIM policy (as in the case of one who occupies the car of another), that occupant, although an insured under the policy of the host car, is not considered eligible for UIM coverage under the host's policy unless the limits of liability on the vehicle of the negligent operator are less than the limits of liability held by the occupant as a named insured, or as a spouse or family member under the policy of a named insured. Presumably, under that language, a passenger in the car of another would not be eligible for UIM benefits under the host's policy unless the tortfeasor's

limits of liability were less than those under the passenger's personal policy.

In this case, involving a full-time employee of an enterprise, the probable fair expectations and common intent of an insurance company and policyholder, absent specification to the contrary, are that the policy provide UIM coverage for employees of the business entity, in this case the bus driver herself.

We expect that there will not be many cases that will not be covered by clear policy language. Still, other complexities remain. For example, once the threshold test for a UIM claim has been met, the statute contemplates that the insured is free to pursue UIM benefits under other policies under which he or she may be insured—whether under his or her personal policy, as the occupant of an employer's vehicle, the permissive occupant of a motor vehicle owned by any other insured person, or as the resident in the household of a relative possessing his or her own UIM insurance. Each of those UIM policies is opened up to the insured once the threshold test is met. *Supra* at 485–486. Of course, in any multiple policy setting, *N.J.S.A.* 17:28–1.1c, or at least the first sentence thereof, applies and prohibits stacking of UIM benefits on either an intra-policy or inter-policy basis. We have granted certification in *Magnifico v. Rutgers Casualty Insurance Company*, 149 *N.J.* 407, 694 *A.2d* 193 (1997), to consider the standard "other insurance" clause in the typical UIM endorsement, which makes the host vehicle's UIM coverage primary to the injured UIM claimant, and the injured UIM claimant's own personal policy excess and the relationship of these endorsements to the anti-stacking provision of *N.J.S.A.* 17:28–1.1c. That provision, in essence, states that if the insured had UIM coverage under more than one policy, any recovery received will not exceed the greater of the limits and "the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits." *N.J.S.A.* 17:28–1.1c.

The judgment of the Appellate Division is reversed and the matter is remanded for arbitration of plaintiff's UIM claim.

496

*For reversal and remand*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.