710 A.2d 573

MICHAEL EINWECHTER AND WANDA EINWECHTER, HIS WIFE, PLAINTIFFS–RESPONDENTS, v. LOUISE J. MARCIANO AND STEVEN R. HAMMELL, DEFENDANTS, HURON INSURANCE COMPANY, A MEMBER OF THE HARLEYS-VILLE INSURANCE COMPANIES, AND HARLEYSVILLE INSURANCE COMPANIES, DEFENDANTS/THIRD–PARTY PLAINTIFFS–APPELLANTS.

STEVEN WARRINER, PLAINTIFF–RESPONDENT, v. LOUISE J. MARCIANO AND STEVEN R. HAMMELL, DEFENDANTS.

HURON INSURANCE COMPANY, A MEMBER OF THE HARLEYS-VILLE INSURANCE COMPANIES, AND HARLEYSVILLE INSURANCE COMPANIES, DEFENDANTS/THIRD–PARTY PLAINTIFFS–APPELLANTS, v. PENNSYLVANIA NATIONAL INSURANCE COMPANY, THIRD–PARTY DEFENDANT–RE-SPONDENT.

STEVEN R. HAMMELL, PLAINTIFF, v. LOUISE J. MARCIANO, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued April 1, 1998—Decided May 18, 1998.

Before Judges BAIME, BROCHIN and BRAITHWAITE.

*Robert A. Hicken* argued the cause for third-party plaintiffs/appellants Huron Insurance Company and The Harleysville Insurance Companies (*Capehart & Scatchard,* attorneys; *Mr. Hicken,* of counsel; *Alison M. Nissen,* on the brief).

*Paul R. D'Amato,* attorney for respondents Michael Einwechter and Wanda Einwechter.[1]

*Katherine M. Morris* argued the cause for respondent Steven Warriner (*Westmoreland, Vesper & Schwartz,* attorneys; *Thomas J. Vesper* and *Ms. Morris,* on the brief).

*Susan Petro* argued the cause for third-party defendant-respondent Pennsylvania National Insurance Company (*Cooper, Perskie, April, Niedelman, Wagenheim & Levenson,* attorneys; *Ms. Petro,* on the brief).

PER CURIAM.

On December 6, 1994, at about 8:00 a.m., plaintiffs Michael Einwechter and Steven Warriner were riding in a van driven by defendant Steven R. Hammell and owned by Warriner Construction Company ("Construction Company"). The van was traveling south on the Garden State Parkway. A car driven by defendant Louise J. Marciano, traveling north on the Parkway, crossed the median and collided with Construction Company's van, injuring Hammell, Einwechter, Warriner, and Marciano.

Einwechter, Warriner, and Hammell were employees of Construction Company and were in the course of their employment at the time of the accident.

Marciano was insured under an automobile liability policy issued by Allstate Insurance Company with policy limits of $50,000 per person and $100,000 per accident. Allstate acknowledged Marciano's liability and tendered the limits of her policy to settle the claims against her.

Construction Company's van was covered by a business automobile insurance policy issued by The Harleysville Insurance Companies. The Harleysville policy had UM/UIM limits of $1,000,000.

---

[1] Immediately before oral argument, we were informed that the Einwechters had settled their claims against defendants. Their attorney did not participate in oral argument.

The New Jersey UM/UIM endorsements of the Harleysville policy define an insured in part as:

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."...

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

The "Other Insurance" condition of the "Business Auto Conditions" section of the Harleysville policy provides that:

a. For any covered "auto" you own, this Coverage Form provides primary insurance....

"You" and "your" are defined to mean an insured named on the declarations page. Construction Company is a named insured. Hammell, Einwechter, and Steven Warriner are not.

Steven Warriner was insured under a Pennsylvania National Insurance Company ("Penn") policy insuring an automobile which he owned. That policy had UM/UIM policy limits of $300,000. The "Other Insurance" section in the "Uninsured Motorists Coverage" of the Penn policy provides that:

If there is other applicable insurance available under one or more policies or provisions of coverage:

....

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

By orders for partial summary judgment, the Law Division ruled that Einwechter's and Warriner's wives are eligible for compensation under the UIM coverage of Construction Company's policy for their *per quod* claims and that the Harleysville policy is primary with respect to Steven Warriner's UIM claim. Defendants Huron and Harleysville appeal both issues. For the following reasons, we affirm.

There are no reported cases in New Jersey that address whether an employer's business auto policy covers the *per quod* claim of an injured employee's spouse. Some cases, however, mention without comment that a spouse filed a *per quod* claim under the policy covering the employed spouse's injuries. *See, e.g., Harris v. Security Ins. Group,* 140 *N.J.Super.* 10, 12, 354

A.2d 704 (App.Div.1976). In *Tichenor v. Santillo,* 218 *N.J.Super.* 165, 173, 527 *A.*2d 78 (App.Div.1987), we said:

> A *per quod* claim is only maintainable by reason of a spouse's personal injury. It depends upon and is incidental to the personal injury action. Our courts have characterized it as a derivative claim, not a separate cause of action. Such claims must be joined with the primary claim in a single action. The derivative claim can rise no higher than the personal injury claim of the other spouse.

■ New Jersey courts have generally stated that in determining UIM coverage, reasonable effect should be given to the expectations of the employer and employee. *See, e.g., Cook–Sauvageau v. PMA Group,* 295 *N.J.Super.* 620, 627, 685 *A.*2d 978 (App.Div.1996), *certif. denied,* 150 *N.J.* 29, 695 *A.*2d 671 (1997). In the present case, the language of the Harleysville policy which provides coverage for "[a]nyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured' " is undoubtedly intended to cover an uninjured spouse's *per quod* claim. Harleysville concedes that both Michael Einwechter and Steven Warriner are insureds, although not "named insureds" under the Harleysville policy. Their wives' *per quod* claims are therefore also covered by the policy. *Cf. French v. New Jersey Sch. Bd. Ass'n Ins. Group,* 149 *N.J.* 478, 492, 694 *A.*2d 1008 (1997) (" 'In appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the contract was made. Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning.' ") (quoting *Leader Nat'l Ins. Co. v. American Hardware Ins. Group,* 249 *Neb.* 783, 545 *N.W.*2d 451, 455 (1996)).

The interpretation of *Aubrey v. Harleysville Insurance Co.,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995), on which Huron and Harleysville rely is an erroneous extension of that case. *See French, supra,* 149 *N.J.* at 487, 694 *A.*2d 1008 ("[W]e intended the *Aubrey* principle to be an indication of the fair expectations of parties when there are no surer indicators of policy language or statutory policy that would provide direction concerning when a UIM policy is 'held' by a claimant."). Summary judgment was therefore

properly granted on the ruling that Einwechter's and Warriner's wives are eligible for compensation for their *per quod* claims under the UIM coverage of the Construction Company's insurance policy.

■ Policy language also determines which policy is primary. When determining " 'the issue of whether [UIM] coverage is primary, co-primary, or excess, we look to the terms of each policy.' " *Di Ciurcio v. Liberty Mut. Ins. Co.*, 299 *N.J.Super.* 426, 432, 691 *A.*2d 396 (App.Div.1997) (quoting *American Reliance Ins. Co. v. American Cas. Co.*, 294 *N.J.Super.* 238, 240, 683 *A.*2d 205 (App.Div.1996), *certif. denied*, 150 *N.J.* 29, 695 *A.*2d 671 (1997)). " '[W]e cannot emphasize too strongly that when an insurance policy is clear and unambiguous ... the court is bound to enforce the policy as it is written.' " *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 *N.J.Super.* 409, 416, 638 *A.*2d 924 (App.Div.1994) (quotation omitted), *quoted in French, supra,* 149 *N.J.* at 492, 694 *A.*2d 1008.

■ The Harleysville policy issued to Construction Company provides primary UIM coverage for any auto which it owns. The Penn policy issued to the Warriners provides excess UIM coverage for any auto that they do not own for which there is other primary insurance. In the December 1994 accident, the vehicle in which Michael Einwechter, Steven Warriner, and Steven R. Hammell were riding was owned by the Construction Company. Accordingly, it is clear from the language of the Harleysville and Penn policies that Harleysville provides primary coverage for Steven Warriner's UIM claim and Penn provides excess coverage.

Defendants' reliance on *Magnifico v. Rutgers Casualty Insurance Co.*, No. A–853–95 (App.Div. Dec. 19, 1996), *certif. granted,* 149 *N.J.* 407 (1997) and *Frankel v. Motor Club of America Insurance Co.*, 298 *N.J.Super.* 250, 689 *A.*2d 728 (App.Div.1996), is misplaced. These cases are distinguishable because, in both, the person claiming coverage under a policy insuring the vehicle in which he or she was riding was not an employee of the vehicle's owner. Moreover, in *Magnifico, supra,* this court reaffirmed that

when two policies provide UIM coverage, the terms of the policies determine which policy is primary. *Magnifico, supra,* No. A–853–95 at 8. The order for summary judgment on the issue of primary coverage was therefore correct.

The judgment appealed from is affirmed.