889 A.2d 483 (2006)
382 N.J. Super. 408
HORNET EXPRESS, a New Jersey Corporation, Plaintiff-Respondent,
v.
ZURICH AMERICAN INSURANCE GROUP, a Stock Insurance Company, Defendant-Appellant,
v.
Garden State Brokers, Inc., and Harry Delbosco, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 2005.
Decided January 26, 2006.
Beverly M. Barr, White Plains, NY, argued the cause for appellant (Reger, Rizzo, *484 Kavulich & Darnall, attorneys; Ms. Barr, on the brief).
Joseph Suarez, Jersey City, argued the cause for respondents Garden State Brokers, Inc. and Harry Delbosco (Suarez & Suarez, attorneys; Mr. Suarez, of counsel; Denise R. Wasserman, on the brief). Respondent Hornet Express did not file a brief.
Before Judges SKILLMAN, PAYNE and MINIMAN.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether an insurance policy that provides coverage for New Jersey workers' compensation benefits should be construed to require the insurer to pay the portion of a workers' compensation judgment entered in another state that would have been awarded if the claim petition had been filed in New Jersey. We conclude that the plain and unambiguous language of the insurance policy limits coverage to compensation benefits awarded under the New Jersey Workers' Compensation Act.
Plaintiff Hornet Express, a trucking company with a base of operations in New Jersey, applied for workers' compensation coverage through the New Jersey Workers Compensation Insurance Plan (NJWCIP). The NJWCIP provides involuntary assigned risk coverage to New Jersey employers that cannot obtain coverage in the voluntary market. The risk covered by policies issued through the NJWCIP is defined as "the entire insured operations within the State of New Jersey or to which the New Jersey Compensation Law is applicable."
The application form for workers' compensation coverage that Hornet submitted to the NJWCIP asked: "Do you have operations in states other than New Jersey?" Hornet answered: "no." The application form also included a "Trucker Supplemental Application" page, which stated: "If you or your employees spend a majority of driving time in a certain state, name that State for yourself and each employee." In the blank following this inquiry, Hornet identified "NJ" as the only state where its employees spend a majority of driving time. Contrary to the representations set forth in its application to the NJWCIP, Hornet employed drivers who operated trucks solely in Pennsylvania.
The application containing these misrepresentations was prepared on Hornet's behalf by its insurance broker, defendant Garden State Brokers, Inc. Defendant Harry DelBosco is the principal of this brokerage company.
The NJWCIP assigned responsibility to defendant Zurich American Insurance Group to provide coverage to Hornet under the New Jersey Assigned Risk Program. Under this program, the policy Zurich issued to Hornet was required to contain the specific policy provisions set forth in the New Jersey Workers Compensation Insurance Manual.
In conformity with this manual and the application Hornet submitted to the NJWCIP, Zurich issued a policy to Hornet, which stated:
3A. WORKERS COMPENSATION INSURANCE: Part One of the policy applies to the Workers Compensation Law of the state(s) listed here:
NJ
The policy also stated:
3C. OTHER STATES INSURANCE: Part Three of the policy applies to the states, if any, listed here:
COVERAGE EXCLUDED
*485 Hornet did not obtain any workers' compensation coverage other than the policy issued by Zurich.
On June 7, 2001, one of Hornet's Pennsylvania drivers, Bret Kegarise, was involved in a fatal accident while operating a Hornet truck in the course of his employment in Pennsylvania. Kegarise's work for Hornet consisted exclusively of driving a daily route between King of Prussia, Pennsylvania and Allentown, Pennsylvania. Kegarise also lived in Pennsylvania with his family and parked the Hornet truck in Pennsylvania when he was not working.
Kegarise's widow filed a workers' compensation death benefit claim against Hornet in the Bureau of Workers' Compensation of the Pennsylvania Department of Labor and Industry. Zurich disclaimed coverage for this claim on the ground that the policy it had issued to Hornet only provided coverage for New Jersey workers' compensation benefits. Hornet did not defend the claim petition, and a Pennsylvania Workers' Compensation judge issued a final decision requiring Hornet to pay death benefits to Kegarise's widow. This decision included a finding that Hornet "did not carry Workers' Compensation insurance coverage in the Commonwealth of Pennsylvania."
Hornet subsequently brought this action against Zurich, Garden State Brokers and DelBosco. Hornet sought a declaration that the Zurich policy provided coverage for the death benefits awarded to Kegarise's widow by the Pennsylvania Bureau of Workers' Compensation. In the alternative, Hornet asserted a negligence claim against Garden State Brokers and DelBosco for failing to obtain comprehensive workers' compensation coverage that would apply to the Pennsylvania claim by Kegarise's widow.
The case was brought before the court by Zurich's motion for summary judgment seeking dismissal of Hornet's complaint on the ground that the policy it issued to Hornet did not provide coverage for benefits awarded by the Pennsylvania Bureau of Workers' Compensation. Garden State filed a cross-motion for summary judgment seeking a declaration that Zurich was required to indemnify Hornet for defense costs and the Pennsylvania compensation award.
The trial court concluded in an oral opinion that because Zurich would have provided coverage to Hornet if Kegarise's widow had filed a claim for workers' compensation in the New Jersey Division of Workers' Compensation, it was required to provide "New Jersey coverage" to Hornet for the Pennsylvania workers' compensation award. Accordingly, the court denied Zurich's motion for summary judgment and granted Garden State's cross-motion.
We conclude that the policy Zurich issued to Hornet only provided coverage for workers' compensation benefits awarded under the New Jersey Workers' Compensation Act. Therefore, we reverse the orders denying Zurich's motion for summary judgment and granting summary judgment to Garden State.
It is the court's responsibility "in construing ... [a] polic[y] of insurance, as with any other contract, ... to search broadly for the probable common intent of the parties in an effort to find a reasonable meaning in keeping with the express general purposes of the polic[y]." French v. N.J. Sch. Bd. Ass'n Ins. Group, 149 N.J. 478, 493-94, 694 A.2d 1008 (1997) (quoting Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J.Super. 409, 416, 638 A.2d 924 (App.Div.1994)). It cannot be "emphasize[d] too strongly that when an insurance policy is clear and unambiguous ... the court is bound to enforce the policy as it is written." Id. at 494, 694 A.2d 1008 (quoting *486 Royal Ins. Co., supra, 271 N.J.Super. at 416, 638 A.2d 924).
Under the clear and unambiguous terms of the policy Zurich issued to Hornet in accordance with the NJWCIP assigned risk plan, coverage was limited to workers' compensation benefits awarded under the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-1 to -128. Part 1(b) of the policy stated:
We will pay promptly when due the benefits required of you by the workers compensation law.
The general section defined "workers compensation law" to mean "the workers or workmen's compensation law ... of each state or territory named in Item 3.A. of the Information Page." Item 3A of the information page stated:
WORKERS COMPENSATION INSURANCE: Part One of the policy applies to the Workers Compensation Law of the state(s) listed here:
NJ
Item 3C of the information page stated:
OTHER STATES INSURANCE: Part Three of the policy applies to the states, if any, listed here:
COVERAGE EXCLUDED
In addition, section 3(A)(4) of the policy stated:
If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.
Therefore, these policy provisions clearly and unambiguously indicated that unless "other states" coverage was provided under item 3(C) of the information page, which Hornet's policy explicitly excluded, coverage was provided solely for New Jersey workers' compensation benefits and not for workers compensation benefits awarded under the laws of any other state.
In addition to these policy provisions, an insert accompanying the policy, which was required under instructions issued by the NJWCIP, stated:
ATTENTION
NOTICE TO POLICYHOLDERS
IF YOU HAVE EMPLOYEES WHO TRAVEL OR WORK OUT OF STATE, YOU MAY NEED ADDITIONAL WORKERS' COMPENSATION INSURANCE. CONSULT YOUR INSURANCE ADVISOR OR CARRIER PRIOR TO COMMENCEMENT OF OPERATIONS IN ANY STATE NOT LISTED ON YOUR POLICY.
Despite the clarity of the policy language and the notice accompanying the policy that the coverage provided by Zurich was limited to benefits awarded under the New Jersey Workers' Compensation Act, the trial court held that Zurich must pay the portion of the judgment entered by the Pennsylvania Bureau of Workers' Compensation for which Zurich would have been liable if Kegarise's widow had filed her claim in the New Jersey Division of Workers' Compensation. The trial court did not determine the amount of such liability or indicate how this determination would be made.[1] Nor did the court point to any policy language that supported its conclusion that the Zurich policy provided coverage not only for workers' compensation benefits awarded under the New Jersey Workers' Compensation Act but also for the portion of an award made under the laws of another state that hypothetically would have been awarded if the *487 claim petition had been filed in New Jersey rather than that other state.
Instead, the trial court relied upon this court's decision in Toebe v. Employers Mut. of Wausau, 114 N.J.Super. 39, 274 A.2d 820 (App.Div.1971) to support imposition of such liability upon Zurich. In that case, an employee of a Minnesota trucking company suffered a work-connected injury while operating one of his employer's trucks in New Jersey. The employee filed a claim petition in the New Jersey Division of Workers' Compensation and was awarded benefits. When the employer failed to pay the award, the injured employee filed a Law Division action against the employer's workers' compensation insurer. Id. at 41, 274 A.2d 820. The insurer defended on the ground that the policy it had issued to the employer only provided coverage for benefits payable under the Minnesota workers' compensation law. Id. at 43, 274 A.2d 820. In support of this defense, the insurer relied on a provision of the declarations page of the policy, which stated:
Coverage A of this policy applies to the Workmen's compensation law ... of each of the following states: Minnesota.
[Ibid.]
The court rejected this defense and held that "an insurer may be liable for an award granted in a state other than that specified in the policy, to the extent that the award would have been granted under the compensation law of the latter state." Id. at 48, 274 A.2d 820. In reaching this conclusion, the court stated that "by holding defendant insurer liable for only that portion of the award, be it part or all, as would have been recoverable pursuant to Minnesota's workmen's compensation law, the terms of the policy and its premium base are not changed." Id. at 49, 274 A.2d 820.
The Supreme Court granted the insurer's petition for certification, Toebe v. Employers Mut. of Wausau, 58 N.J. 599, 279 A.2d 684 (1971), and on March 21, 1972, the Court held oral argument, Toebe v. Employers Mut. of Wausau, 63 N.J. 198, 306 A.2d 66 (1973).
On May 2, 1972, with the consent of the parties, the Court entered an order that stated in pertinent part:[2]
(1) that plaintiff shall within 60 days from the date hereof institute an appropriate proceeding in the State of Minnesota against the employer and also against the defendant carrier if permitted by Minnesota law to join the carrier, for the recovery of workmen's compensation benefits arising out of the accident involved in the present proceeding;
(2) that the defendant carrier shall accept service of process in such proceeding on behalf of its assured and also on behalf of itself if it is also a party defendant;
(3) that the defendants in the Minnesota proceedings shall not dispute their liability to plaintiff for the payment of workmen's compensation benefits under the Minnesota law and shall not assert any claim that notice was not given or that the proceedings were not instituted timely, all to the end that the amount of such liability shall be determined and an appropriate judgment entered therefor in the State of Minnesota;
(4) that upon the satisfaction of such judgment in the State of Minnesota, the proceedings before this Court shall be terminated by an order reversing the judgment of the Appellate Division and *488 directing the dismissal of the proceedings in this State against the defendant carrier, all such orders in this State to be entered without costs in favor of any party[.]
On May 9, 1973, counsel notified the Court that the claim petition filed by the employee with the Minnesota Workmen's Compensation Commission had been settled and that the employee had been paid Minnesota compensation benefits in accordance with the terms of that settlement. After receiving this notice, the Court entered an order on June 19, 1973, in accordance with the May 2, 1972 consent order, "reversing the judgment of the Appellate Division and directing the dismissal of the proceedings in [New Jersey] against the defendant carrier." Toebe, supra, 63 N.J. at 199, 306 A.2d 66. Since the Supreme Court reversed the judgment of the Appellate Division in Toebe based on the award of compensation benefits in Minnesota, we do not believe that the Appellate Division decision in Toebe is entitled to any precedential weight.
In any event, the provisions of the insurance policy involved in Toebe were not comparable to the policy Zurich issued to Hornet. Although the policy involved in Toebe contained a provision similar to item 3A of the Zurich information page, which stated that the workers' compensation coverage provided therein applied to a specified state, in that instance Minnesota, there is no indication the policy involved in Toebe included a provision for "Other States Insurance" coverage, which the employer had explicitly excluded from its coverage, as Hornet did in this case. Nor is there any indication that the policy contained a provision comparable to 3(A)(4) of the Zurich policy, which provided: "If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days[,]" or an accompanying notice to the policyholder that additional coverage may be needed if it has any employees who travel or work out-of-state. Therefore, even if this court's decision in Toebe were supportable under the terms of the policy involved in that case, the result in Toebe could not be justified under the clear and unambiguous language of the Zurich policy limiting Hornet's coverage to workers' compensation benefits awarded under the New Jersey Workers' Compensation Act.
Garden State also argues, in the alternative, that Zurich is estopped from denying coverage for Kegarise's Pennsylvania claim petition because it did not disclaim coverage in a timely manner. This argument is clearly without merit. Zurich notified Hornet by letter dated September 5, 2001, less than a month after the filing of Kegarise's Pennsylvania claim petition, that the Zurich policy "[does] not provide coverage in Pa[,]" and that unless Hornet has a separate policy for its workers' compensation liability in Pennsylvania, it "will need to retain counsel to defend [its] position."
Accordingly, the orders denying Zurich's motion for summary judgment and granting summary judgment to Garden State are reversed.
NOTES
[1] The parties subsequently entered into a settlement agreement establishing this amount. The determination whether this amount is payable by Zurich or Garden State is contingent upon the outcome of the present appeal.
[2] Although this order is not published in the New Jersey reports, it is on file with the Clerk of the Supreme Court.