176 N.J. Super. 301 (1980)
422 A.2d 1327
GARDEN STATE FIRE & CASUALTY COMPANY, PLAINTIFF-APPELLANT,
v.
COMMERCIAL UNION INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, COSTA ICE CREAM COMPANY AND ANDREW COSTA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1980.
Decided October 23, 1980.
*302 Before Judges BISCHOFF, MILMED and FRANCIS.
Jerome S. Lieb argued the cause for appellant (Lieb, Berlin & Kaplan, attorneys).
*303 John Zen Jackson argued the cause for respondent Federal Insurance Company.
PER CURIAM.
The sole issue in this litigation is whether Garden State Fire & Casualty Company (Garden State) who paid Personal Injury Protection (PIP) benefits with respect to a certain claim is entitled to recover any portion of those benefits from a carrier who affords excess coverage to an automobile driver in an accident.
On November 11, 1974 John Matushek was struck and seriously injured by a motor vehicle owned by Costa Ice Cream Company (Costa) and operated by Andrew G. Costa with its permission. At the time of the accident Matushek was insured by Garden State for automobile liability insurance upon his own vehicle which was not involved in the accident. In accordance with N.J.S.A. 39:6A-1 et seq., the Automobile Reparation Reform Act, Garden State paid the PIP bills of Matushek in an amount exceeding $130,000 and pursuant to its right of subrogation sought arbitration from Commercial Union Insurance Company (Commercial), the primary automobile insurer of Costa, and Federal Insurance Company (Federal), the umbrella excess liability carrier. Commercial's policy provided basic liability coverage to the extent of $250,000.
Garden State pursued its claim for PIP reimbursement by way of a complaint filed against Commercial, Federal,[1] Costa and A.G. Costa, individually. The latter was not served and did not appear in the action. The complaint alleged that Matushek had been injured through the proximate negligence of the driver of the Costa vehicle. In addition to seeking a reimbursement *304 against all defendants, the complaint also sought a judgment requiring in the alternative that the defendant insurance companies submit themselves to binding arbitration.
In answering, defendants all denied that the accident was due to the negligent operation of the Costa vehicle.
In the interim, Commercial had settled Matushek's action against it for $225,000, and offered to pay Garden State the unpaid balance of its policy in the sum of $25,000. Federal denied any liability coverage. At the trial Garden State accepted the sum of $25,000 from Commercial pursuant to the holding in Pennsylvania Mfrs. Ass'n Ins. Co. v. Government Emp. Ins. Co., 136 N.J. Super. 491 (App.Div. 1975), aff'd 72 N.J. 348 (1977), which limited the liability of Commercial to the unpaid balance upon its liability policy. Garden State then voluntarily dismissed the complaint against Commercial and Costa, leaving Federal as the sole defendant in the action. The case was then submitted on a stipulation of facts and oral argument. The trial judge, in a letter opinion, entered judgment in favor of defendant Federal and the within appeal followed.
The single question to be decided here is whether Federal by its excess policy is liable to Garden State in subrogation for PIP payments made by Garden State.
We are of the view that the trial court was correct in denying the claim of Garden State.
In 1972 New Jersey adopted the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., commonly known as the "No Fault" Law. An essential feature of this act is that it requires the insurers of private automobiles to provide Personal Injury Protection (PIP) coverage for their drivers. PIP is first-party coverage designed to compensate injured drivers for their medical expenses, lost wages and certain other expenses, without regard to fault. Rybeck v. Rybeck, 141 N.J. Super. 481 (Law Div. 1976), app. dism. 150 N.J. Super. 151 (App.Div. 1977).
*305 The Legislature's intent in adopting the act was to provide a means of quickly compensating injured motorists. The tort system was considered to be an inefficient means of compensation since it required expensive and time-consuming litigation, and since it would not compensate drivers whose own fault caused their injuries. The act contemplated the elimination of burdensome administrative and investigative expenses and a consequent lowering of insurance premiums. Rybeck v. Rybeck, supra at 490.
As stated, PIP coverage is first-party coverage. The intent of the No Fault Law is that each automobile insurer should pay the medical expenses of its insured. It is the primary coverage. Substantial savings to insurers and the public were expected to result from the elimination of intercompany litigation. However, since it was anticipated that there would be difficulties in setting up the system, a temporary subrogation provision was included in the law. N.J.S.A. 39:6A-9 provides:
Any insurer paying benefits in accordance with the provisions of section 4 and section 10, personal injury protection coverage, regardless of fault, shall be subrogated to the rights of any party to whom it makes such payments, to the extent of such payments. Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation rights against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident. The exemption from tort liability provided in section 8 does not apply to the insurers' subrogation rights. On and after 2 years from the effective date of this act the provisions of this section shall be inoperative. [Emphasis supplied]
It is upon this section that Garden State relies. The intent of this section was explained by the court in Pennsylvania Mfrs. Ass'n Ins. Co. v. Government Emp. Ins. Co.:
It is manifest that the legislation was adopted for the benefit of the injured victim and the elimination of the cumbersome and uneconomic shifting of dollars from one insurance company to another through the means of subrogation. It has been suggested that the retention of subrogation through the avenue of arbitration for a period of two years was intended solely for the purpose of compiling statistics for the rate-making process. See Iavicoli, No Fault & Comparative Negligence in New Jersey at 117 (1973). [136 N.J. Super. at 499]
*306 There are two provisions of the statute which are directly applicable to the case at bar. First, N.J.S.A. 39:6A-9 applies only to an insurer "paying benefits in accordance with section 4 and section 10, personal injury protection coverage." Clearly, this section, as noted above, is designed to allow insurers who provide PIP payments to recover them, at least temporarily, as part of the rate-setting process.
In the instant case the Federal policy is an excess liability policy only. It contains no provision for the payment of first-party PIP benefits. Such coverage was unnecessary since unlimited first party PIP coverage was already available to the excess carrier's insured through the primary coverage afforded by the underlying liability policy.
Since the excess carrier in this case was not a participant in the No Fault system, did not collect premiums for PIP coverage and, under the terms of its policy, never assumed PIP liability when issuing the excess policy, it follows that it is not vulnerable to arbitration proceedings by any primary carrier.
Additionally, the statute gives the PIP paying company a right to proceed only against "the insurer of any person liable for such damages in tort." N.J.S.A. 39:6A-9. Garden State's subrogation rights are thus limited to the following language:
Such subrogated insurer may only by intercompany arbitration or by intercompany agreement exercise its subrogation right against only the insurer of any person liable for such damages in tort provided, however, that such insurer may exercise its subrogation rights directly against any person required to have in effect the coverage required by this act and who failed to have such coverage in effect at the time of the accident. [emphasis supplied.]
The issue is, who is the "insurer" against whom Garden State may exercise its subrogation rights. It is only an insurer providing No Fault benefits. This is demonstrated by considering the qualifying phrase that the subrogated insurer may proceed directly against the tortfeasor who failed to have in effect the required No Fault coverage. Obviously, "the insurer" referred to in the preceding phrase of that sentence of the statute is one which provides such coverage. The statute does not speak of "an insurer" or "any insurer." Use of the definite *307 article "the" indicates a particular type of insurer within the contemplation of the act.
We therefore conclude that this section should have no application to an insurer which provides only excess coverage.
A further reason to deny subrogation against an excess carrier is also contained within the subrogation provision of N.J.S.A. 39:6A-9. Reference therein is to §§ 4 and 10 of the act. Section 4 regulates only "every automobile liability insurance policy" and requires carriers to provide coverage for basic PIP benefits. Likewise, § 10 governs only auto liability insurance carriers and requires additional PIP coverage to be made available. The excess policies are clearly not the auto liability policies referred to in the statute.
Finally, the contractual provisions of the excess policies may generally be characterized as provisions for indemnification. The excess carriers are to indemnify their insured "for all sums which the insured shall be obligated to pay by reason of the liability imposed upon the insured by law...." Here, there being no liability on the part of the insured, there can be no obligation to indemnify on the part of the excess carrier.
Affirmed.
NOTES
[1] The complaint as originally filed named Chubb and Son, Inc. as a defendant. When plaintiff learned that Chubb and Son was only the manager of the policy and that the insurance was written by the Federal Insurance Company, plaintiff obtained an order dated June 13, 1977 substituting Federal in the place of Chubb and Son without the necessity of formal amendment.