215 N.J. Super. 247 (1987)
521 A.2d 896
LILLIAN HELLWIG, PETITIONER-RESPONDENT,
v.
J.F. RAST & COMPANY, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1987.
Decided February 23, 1987.
Before Judges SHEBELL and STERN.
*248 Robert J. Young argued the cause for appellant (Hoagland, Longo, Oropollo & Moran, attorneys; Robert J. Young, of counsel and on the brief).
Patrick R. Caulfield argued the cause for respondent (Levinson, Conover, Axelrod, Wheaton & Grayzel, attorneys; Patrick R. Caulfield, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Appellant-employer, J.F. Rast & Company, Inc., appeals a judgment of the Division of Workers' Compensation, awarding Lillian Hellwig dependency benefits for the death of her husband, Thomas Hellwig, who died while working as a steamfitter on July 31, 1983. The judge of compensation found death was due to a myocardial infarction caused by stress and strain of work. Appellant contends that the proofs were inadequate to sustain a finding that decedent suffered a compensable cardiac injury within the meaning of N.J.S.A. 34:15-7.2. We disagree and affirm the award of dependency benefits.
The employer does not dispute the facts presented in furtherance of the dependency petition; rather it argues that even accepting those facts the requirements of § 7.2 are not satisfied. The facts demonstrate that decedent was on his first day back at work at the Anheuser-Busch plant in Newark, New Jersey, after a seven to nine week layoff during which he had mostly remained at home doing very little. He would sit in the backyard, watch television, occasionally ride a lawnmower to cut the lawn, or go to the local store. He also reported to the union hall several times a week in an effort to obtain work apparently without success. His home and automobile were air conditioned.
The decedent reported to work at 8 a.m. on the day of his death and was assigned the task of repairing a pasteurizer, a large machine with a series of tanks approximately 10 feet high and 30 feet long. The work was on an upper level which had to *249 be reached by stooping under conveyors and climbing six to eight steps of a ladder situated at a 70 degree angle. Together, decedent and a coemployee raised 20 to 25 stainless steel doors on top of the pasteurizers to check for leaking sprayheads. These doors weighed approximately 35 to 50 pounds and were lifted from a cramped position, each worker using one hand, because conveyors were overhead. The temperature in the work area was in the 80s and the humidity was high. The decedent was sweating while carrying out the inspections.
After the inspections he and his coworker walked to the maintenance shop which was down one floor and approximately 1,000 feet away. There they obtained a welding machine, a large bottle of gas and a few hundred feet of welding lead which they moved in two trips from the maintenance shop to the freight elevator. The welding machine had three wheels and weighed approximately 300 pounds and was awkward. This required the workers to push and pull it to the elevator. Decedent carried approximately 100 pounds of the welding lead to the elevator and the two then moved the equipment from the elevator to the pasteurizer by bending under conveyors and pushing and pulling the equipment. At approximately 9:30 they took a 15 to 20 minute coffee break and then decedent went to the bathroom. When he returned he made a couple of more trips up and down the ladder. His coemployee began welding and asked decedent to go down the ladder and adjust the welding machine. The coworker later noted that the machine had been adjusted but that the decedent did not return. This caused the coworker to look over the side where he saw decedent lying unconscious with other workers ministering to him.
Decedent did not regain consciousness and an autopsy revealed "[a]therosclerotic cardio-vascular disease, severe; acute inferior wall myocardial infarct." The medical expert called on behalf of petitioner testified that decedent died of an acute myocardial infarction which occurred when the work effort produced an increase in the heart rate and blood pressure *250 causing a rupture of an atheromatous plaque which in turn caused an occlusion of the blood supply to the heart, resulting in arythmia and death. This doctor considered that the plaque probably ruptured during the work effort before the coffee break and that the infarction occurred at the time of death. The testimony of the employer's medical expert was that the decedent's death was caused by an episode of fatal ventricular fibrillation which was the result of the natural progression of the coronary artery disease from which he suffered. This expert was of the opinion that the autopsy did not demonstrate an infarction.
The judge of compensation found that decedent's work effort was strenuous and in excess of the wear and tear of daily living which he found to be quite sedentary. He was led to the "inescapable conclusion that the work effort was significantly and substantially in excess thereof." The judge found that the effort caused in a material degree an infarction which led to petitioner's sudden death. He found the opinion of the expert called on behalf of decedent to be far more acceptable than that of the employer's.
The scope of our review of factual determinations of a judge of compensation is limited to whether the findings could reasonably have been reached on sufficient credible evidence present in the record giving due regard to the opportunity of the judge to determine the witness's credibility and also to the judge's expertise in workers' compensation matters. Close v. Kordulak Brothers, 44 N.J. 589, 599 (1965). Applying this test, we find no cause to disturb the judge's factual findings or his conclusion that the opinion of decedent's expert regarding the mechanics of the cardiovascular accident and resultant death was more sound than the opinion of the employer's expert.
Our acceptance of these findings, however, does not answer appellant's contention that the requirements of N.J.S.A. 34:15-7.2 cannot be satisfied by the facts presented on behalf of *251 decedent. Appellant points to Prusecki v. Branch Motor Express, 206 N.J. Super. 39 (App.Div. 1985) which held that
[a] claimant must prove that a work event or strain was so substantial that it materially caused the injury or death and that such triggering event, when compared with the rigors caused by the stresses and strains ordinarily and regularly encountered in the work place and at home, leads to the conclusion that the injury or death occurred notwithstanding those daily recurring experiences. [Id. at 49 (emphasis deleted and added in other part)].
Decedent's counsel asserts that even this requirement is satisfied because there was no ordinary or regular work of the decedent prior to his death since he was laid off for a substantial period of time prior to the work effort on the day he started working again. The employer asserts, however, that the judge refused an offer to show what the employee regularly did at work, indicating that such consideration was not relevant under § 7.2. We must agree with appellant that if the Prusecki interpretation of N.J.S.A. 34:15-7.2 is correct the record does not contain any evidence from which it can be determined whether the rigors of the work performed by the decedent immediately prior to his death were in excess of those ordinarily and regularly encountered in his workplace. 206 N.J. Super. at 49.
We do not, however, agree with the interpretation of § 7.2 as enunciated in Prusecki. The historical evidence does not support a legislative intent that a worker should recover for a cardiovascular accident caused by the rigors of his work only if able to demonstrate that those stresses and strains were beyond the ones ordinarily encountered in the workplace. We are satisfied that the Legislature intended no more than to require that the cardiovascular accident be caused by the work effort or strain involving a substantial condition in excess of the "wear and tear of the claimant's daily living" exclusive of work. The aim of the Legislature was simply to limit the holding in Dwyer v. Ford Motor Co., 36 N.J. 487 (1962) wherein the Court stated,

*252 [b]enefits are not lost because the amount of the work stress was such that it might or could be duplicated in routine activity about the home or in customary movements or efforts while there. [Id. at 492 (emphasis ours)].
Adherence to Prusecki would return workers' compensation law in cardiovascular cases to where it was after the ruling in Seiken v. Todd Dry Dock, Inc., 2 N.J. 469 (1949). Seiken held that there must be a showing of an unusual strain or exertion beyond the employment itself and that the mere showing that claimant was performing his routine everyday tasks when he suffered a heart attack would not allow recovery. Id. at 476. This requirement of unusual effort or strain was rejected by our Supreme Court in Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 138 (1958).
The original bill to amend the Workers' Compensation Act as introduced in 1978 and referred to the Committee on Labor, Industry and Professions would have required "that the work effort or strain alone involved an event or happening beyond the normal and routine duties of his employment." Senate Bill No. 802 (Feb. 9, 1978). This language, however, was changed to require only that the work effort or strain be "in excess of the wear and tear of the claimant's daily living...." N.J.S.A. 34:15-7.2.
The Joint Statement to Senate Committee Substitute for Senate, No. 802, and Assembly Committee Substitute for Assembly, No. 840 dated November 13, 1979 states that
[t]his legislation would benefit employers by: ... (2) countering the far-reaching effects of Dwyer v. Ford in cardiac claims by requiring that a petitioner prove that the injury or death involved substantial effort or strain which was in excess of the rigors of the claimant's daily living and that the cause of the injury or death was job-related in a material degree....
This does not evidence an intent to undermine the holding in Dwyer which solidified Ciuba's overruling of the unusual effort requirement. Indeed, the operative language in Dwyer is almost identical to the language finally incorporated in § 7.2. Dwyer states:
Such claimant has the burden of showing by the preponderance of the believable evidence that the ordinary work effort or strain in reasonable probability *253 contributed in some material degree to the precipitation, aggravation or acceleration of the existing heart disease and the death therefrom. In this context, the significance of "some material degree" cannot be stated with mathematical precision. It means an appreciable degree; a greater degree than de minimis; it means that there was some employment exertion capable medically of helping the attack  of furthering its progress. [36 N.J. at 493-494].
The relevant language of N.J.S.A. 34:15-7.2 provides:
[T]he claimant shall prove by a preponderance of the credible evidence that the injury or death was produced by the work effort or strain involving a substantial condition, event or happening in excess of the wear and tear of the claimant's daily living and in reasonable medical probability caused in a material degree the cardiovascular or cerebral vascular injury or death resulting therefrom.
Material degree means an appreciable degree or a degree substantially greater than de minimis.

To follow Prusecki would be to return to the law prior to Ciuba wherein an employee if regularly engaged in strenuous labor could not recover for a heart attack caused by that strain even though the requirements of § 7.2 might be otherwise fully satisfied through proof that the attack was "produced by the work effort or strain involving a substantial condition, event or happening in excess of the wear and tear of the claimant's daily living" and even though the same is proven to a medical certainty to have caused in a "material degree" the cardiovascular injury. We have no doubt that the Legislature never intended to deny the payment of workers' compensation benefits where such strenuous activity causes a cardiovascular attack merely because the worker was always compelled to perform strenuous work. Under the Prusecki reasoning, the harder the employee must work each day and thus the greater his risk of having a heart attack, the less the chance that he or his widow can recover benefits when the inevitable occurs. We reject such an unjust and unwarranted holding.
We are satisfied that the judge of compensation applied the proper standard under § 7.2 and that his determination is supported by sufficient credible evidence in the record. The judgment of the Workers' Compensation Division is affirmed.
*254 STERN, J.A.D. (concurring).
For the second time this year I have voted to reject a recent precedent of this court. See Cheung v. Cunningham, 214 N.J. Super. 649 (App.Div. 1987). I am satisfied that the Legislature did not intend to prevent workers' compensation benefits for a heart attack (injury or death from cardiovascular causes) resulting from strain or effort in the work place merely because the employee is normally subject to that strain or effort at work. Rather, as Judge Shebell persuasively demonstrates, the legislative history leading to N.J.S.A. 34:15-7.2 indicates a concern that employers (and, in turn, persons paying for their goods and services) not be obligated to fund benefits for heart attacks occurring at the work place which in reality are not materially caused by an effort or strain of work greater than would have otherwise resulted from the employees' daily living. N.J.S.A. 34:15-7.2 now requires the petitioner to prove that the injury or death involved work effort or strain in excess of the employee's daily living and that the cause of the injury or death was job related in a material degree. See Perno v. Ornstein Fashions, Inc., 196 N.J. Super. 174, 180-183 (App.Div. 1984). Since I read Prusecki v. Branch Motor Express, 206 N.J. Super. 39, 49 (App.Div. 1985) to require petitioners to prove more, I join Judge Shebell in adopting a different interpretation.
I write only to emphasize my appreciation for the fact that the result of an appeal to this court should not turn on the Part or judges to which the matter is assigned. I detect a growing number of cases resulting in divergent or inconsistent decisions, but believe that there is a true concern about the disparate results and the perceptions that flow therefrom. However, each judge must decide an issue as he or she believes appropriate after giving due deference to any precedent available, see R. 1:36, and this case involves an obligation to interpret legislation, not merely a question of adherence to or respect for "judge made law."
*255 I emphasize that a conflict between decisions of this court constitutes an express ground for certification, see R. 2:12-4, and the Supreme Court can expeditiously settle the disparity or conflict between decisions.