821 A.2d 564 (2003)
360 N.J. Super. 127
Lorraine DAVID, Plaintiff-Appellant,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, Geico General Insurance Company, Geico Direct and The Estate of Adolf Gaerner, Defendants, and
Commercial Insurance Company of Newark, New Jersey and CNA Insurance Company, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 2003.
Decided May 8, 2003.
*565 Robert W. Ruggieri, argued the cause for appellant Lorraine David (Mr. Ruggieri and Kam S. Minhas, of counsel and on the brief).
Jeffrey A. Oshin argued the cause for respondents, Commercial Insurance Company of Newark, New Jersey and CNA Insurance Company (Hardin, Kundla, McKeon, Poletto & Polifroni, attorneys; Mr. Oshin, of counsel and on the brief).
Before Judges STERN, COBURN, and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
In this appeal we are urged to depart from our decision in Knox v. Lincoln Gen. Ins. Co., 304 N.J.Super. 431, 701 A.2d 445 (App.Div.1997). We held in Knox that a personal injury protection (PIP) insurance carrier is not required to notify its insured before obtaining reimbursement from an alleged tortfeasor's insurer of PIP benefits the PIP insurer has paid to its insured, even though the tortfeasor's coverage might be insufficient to cover both the PIP reimbursement claim and the damages of the PIP carrier's insured, and the insured consequently might be unable to recover from the tortfeasor's carrier his or her full amount of damages. Id. at 437, 701 A.2d 445.
In Knox, we noted the application of N.J.S.A. 39:6A-9.1, stating:
The New Jersey Automobile Reparation Reform Act (the Act), N.J.S.A. 39:6A-1 to 6A-35, ... requires every automobile liability insurance policy to provide PIP coverage so that an injured motorist might have ready access to medical benefits without regard to the motorist's fault and at a time before the ultimate liability for the accident is determined. Sotomayor v. Vasquez, 109 N.J. 258, 261 *566 [536 A.2d 746] (1988); see also N.J.S.A. 39:6A-5. In pertinent part, N.J.S.A. 39:6A-9.1 provides as follows:
An insurer ... paying benefits pursuant to [39:6A-4], as a result of an accident occurring within this State, shall, within two years of the filing of the claim, have the right to recover the amount of payment from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection or medical expense benefits coverage, other than for pedestrians, under the laws of this State[.] In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer ... is legally entitled to recover ... shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved parties or, upon failing to agree, by arbitration.
[304 N.J.Super. at 434, 701 A.2d 445 (alterations in original).]
The court in Knox "glean[ed] a legislative intent in dealing with statutory reimbursement schemes[,]" a "scheme" which the decision states was derived from an "instructive" earlier holding in Otto v. Prudential Prop. and Cas. Co., 278 N.J.Super. 176, 650 A.2d 832 (App.Div.1994), and from the Supreme Court's decision in Frazier v. N.J. Mfrs. Ins. Co., 142 N.J. 590, 667 A.2d 670 (1995), a workers' compensation case. Id. at 435-37, 701 A.2d 445. We continued,
The carriers, whether paying PIP benefits or worker's compensation benefits, both have a right to be made whole even though reimbursement may reduce the pool of available insurance coverage to which the claimant or injured employee may look for recovery. See Otto, supra, at 181 [650 A.2d 832]; Frazier, supra, at 605 [667 A.2d 670]. The fact that a PIP carrier is given a degree of priority in being reimbursed for PIP payments made to its injured insured is understandable. The Act requires the injured motorist's medical expenses to be paid up-front by the PIP carrier without regard to the motorist's fault even before there has been a determination of ultimate liability for the accident, in order to afford the injured motorist a prompt measure of relief not available were he/ she relegated to a conventional common-law negligence action. [citation omitted.] Thus, the possibility that PIP reimbursement may be charged against the tortfeasor's liability coverage is a fair trade-off.
All is not lost for the injured claimant. Recovery may be sought under the underinsured motorist coverage of the tortfeasor's [sic] policy or even against the tortfeasor's excess liability insurer, if such coverage exists.
Beyond insurance coverage, the injured claimant still has a full cause of action for recovery from the tortfeasor, although in the case of an underinsured or impecunious tortfeasor that course may not be fully satisfactory.

[Id. at 437, 701 A.2d 445.]
In the case before us now, the motion judge applied the Knox holding and granted summary judgment dismissing plaintiff's complaint, denying plaintiff's motion for summary judgment, and granting summary judgment in favor of GEICO, the alleged tortfeasor's automobile liability insurance carrier. The motion judge determined that she was "constrained to follow Knox and its reasoning[.]"
Essentially, the facts here are that plaintiff allegedly was injured on February 10, 1999, when the vehicle she was driving was in a two-car collision in New Jersey with a vehicle driven by a New York resident, Adolf Gaerner. GEICO provided *567 Gaerner's automobile insurance coverage under a policy in the amount of $300,000. Plaintiff's insurer was CNA Insurance Company and/or Commercial Insurance Company (collectively "CNA").
In August 2000, CNA obtained through arbitration against GEICO, and without notice to plaintiff, an award of $57,208.46, which was the total of $42,718.86 in PIP benefits CNA had paid plaintiff, $187.50 in "essential services benefits" paid by CNA, and counsel fees for CNA of $14,302.12. The latter was a thirty-three and one-third percent contingent fee calculated on the $42,906.36 total CNA had paid for PIP and essential services benefits.[1]
Plaintiff's counsel thereafter made a settlement offer to GEICO for the $300,000 policy limits and was met with the response from GEICO that this amount was not available to be paid to plaintiff because of the award to CNA. Plaintiff ultimately settled her claim for $242,791.52.
Plaintiff further asserts on this appeal that (1) even if we do not decline to follow Knox, she is entitled to recover so much of the arbitration award as awarded counsel fees to CNA; (2) even if she does not prevail on the foregoing issues, she had a valid claim for underinsured motorist benefits and should have been awarded summary judgment on that aspect of her complaint; (3) even if she does not prevail on any of the foregoing, CNA should have been denied summary judgment for failure to respond to discovery.

I
To support her contention that Knox should not be controlling in this case, plaintiff asserts (1) that her carrier owed her a fiduciary obligation which it improperly subordinated to its own interests by obtaining the PIP reimbursement award, which served to lower the amount under the GEICO policy available to be paid to plaintiff; (2) that CNA's actions were inconsistent with a principle she claims to be common in subrogation cases, that an insurer's right to reimbursement must yield to the insured's rights when the settlement is for less than the full amount of the damages; (3) that this principle was recognized in Pennsylvania Mfrs. Ass'n Ins. Co. v. Gov't Employees Ins. Co., 136 N.J.Super. 491, 347 A.2d 5 (App.Div.1975), aff'd. o.b., 72 N.J. 348, 370 A.2d 855 (1977) (deciding claim under N.J.S.A. 39:6A-9, a predecessor of the current PIP recovery statute); (4) that Otto and Frazier, supra, were incorrectly relied on in Knox to furnish a rule of decision because significant differences between Knox and those earlier cases made the latter inapplicable; (5) that since the PIP carrier has already been paid for providing coverage, the carrier obtains an unfair windfall if it is allowed recovery when the insured's recovery is thereby diminished; (6) that Knox was incorrect in concluding that a PIP carrier would lose its arbitration rights if it failed to proceed with arbitration; and (7) that the current PIP reimbursement statute, N.J.S.A. 39:6A-9.1, was adopted to supersede, "at least in certain circumstances[,]" the holding in Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 567, 428 A.2d 1254 (1981), insofar as it determined, according to plaintiff, that "once the right to reimbursement created by the earlier statute of N.J.S.A. 39:6A-9 lapsed, a PIP carrier no longer could maintain a claim *568 for reimbursement or subrogation of its PIP payments against the tortfeasor or its insurer."

A
As a threshold matter, we address an issue that we raised sua sponte after oral argument. That issue, on which the parties have submitted supplemental briefs, is whether N.J.S.A. 39:6A-9.1 applies to a case such as this one, where the alleged tortfeasor is a non-resident of New Jersey and his or her vehicle is neither garaged nor registered in New Jersey.
Upon consideration of the parties' respective views, we are satisfied that the statute applies in this scenario. Its plain language makes it applicable to "any tortfeasor" not required to maintain PIP coverage. The Legislature did not limit the statute's applicability to commercial vehicle owners or to New Jersey residents, though it plainly could have done so.
N.J.S.A. 39:6A-9.1 refers, moreover, to the "deemer" statute, N.J.S.A. 17:28-1.4, which requires, among other things, that any insurer that is authorized to transact automobile or motor vehicle insurance business in New Jersey and that sells such a policy in another state or Canada must provide PIP coverage for the insured automobile when operated in New Jersey. The deemer statute creates a particular category of out-of-state motorists, namely, the insureds of a defined category of insurers. Because the Legislature in effect has provided that such motorists are not within the scope of N.J.S.A. 39:6A-9.1, the necessary inference is that out-of-state motorists whose insurers are not subject to the deemer statute are subject to the procedures of N.J.S.A. 39:6A-9.1. In other words, in drafting N.J.S.A. 39:6A-9.1, the Legislature would not have needed to refer to the deemer statute if a tortfeasor who resides in another state or who owns a vehicle insured in another state would not have been potentially liable for PIP reimbursement. Thus, we conclude that in N.J.S.A. 39:6A-9.1 the Legislature contemplated recovery of PIP reimbursements from out-of-state residents.
This interpretation, moreover, furthers the purpose of the No-Fault Act and its amendments to reduce insurance costs for New Jersey residents, and accords with the interpretation embraced by the Supreme Court in State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch., 146 N.J. 1, 15, 679 A.2d 620 (1996), in which the Court expressed an intent to read the reimbursement requirement broadly so as to encompass all potentially liable tortfeasors, "consistent with the legislative objective of reducing insurance premiums for owners of private-passenger vehicles."
Although cases pre-dating State Farm apply a somewhat narrower interpretation of N.J.S.A. 39:6A-9.1, none has held that a non-resident tortfeasor, driving a vehicle garaged and insured in another state, was not liable for PIP reimbursement under the statute. We further observe that our recent decision in Gov't Employees Ins. Co. v. Allstate Ins. Co., 358 N.J.Super. 555, 559, 818 A.2d 474 (2003), considered a fact pattern similar to the one before us here and concluded that GEICO was responsible under N.J.S.A. 39:6A-9.1 for reimbursing an in-state insurer for PIP benefits paid on behalf of its insureds, implicitly recognizing that GEICO was subject to the statute.
In our view, then, GEICO was subject in this case to N.J.S.A. 39:6A-9.1 and the arbitrator had jurisdiction to enter a PIP reimbursement award under that statute. It is thus appropriate to seek PIP reimbursement pursuant to N.J.S.A. 39:6A-9.1 even when the underlying motor vehicle *569 accident involves a non-resident tortfeasor driving a vehicle neither registered nor garaged in New Jersey.

B
Turning to the arguments raised by plaintiff, we agree that Otto and Frazier, supra, are not on all fours with Knox. Indeed, the statutes applied in those cases, unlike N.J.S.A. 39:6A-9.1, expressly provided for full recovery by the insurance carrier. In Otto, an automobile accident victim was covered by an insurance policy that included a "reimbursement setoff" option requiring her to reimburse her insurer for medical expenses it paid on her behalf. 278 N.J.Super. at 178, 650 A.2d 832. N.J.S.A. 39:6A-4.3(c) expressly authorized this policy provision, which allowed insurers to receive PIP reimbursements from any recovery for non-economic loss by an injured insured. Id. at 179, 650 A.2d 832.[2]
Otto settled her claim against the tortfeasor's insurance company for $10,000 less than the policy limit. Id. at 178, 181, 650 A.2d 832. Her insurer, which had paid over $75,000 for Otto's medical expenses, failed to seek reimbursement from the tortfeasor's insurance company within the two-year period prescribed by the statute. Id. at 179, 650 A.2d 832. It therefore sought to enforce its contractual right of reimbursement from Otto. Id. at 180, 650 A.2d 832.
We held that the insurer was first obliged to obtain its reimbursement from the tortfeasor's insurance company and only if it was not made whole from that source could the insurer recover from Otto. Ibid. Because the insurer had failed to make a timely application for reimbursement, the amount it was entitled to recover from Otto must be reduced, we concluded, by $10,000 to reflect "the unused balance of the tortfeasor's coverage." Id. at 181, 650 A.2d 832. In reaching this conclusion, the court reasoned that "[i]f [the insurer] had been reimbursed by the commercial tortfeasor's insurer before plaintiff [Otto] had settled her lawsuit against that tortfeasor, plaintiff [Otto] would have been limited by the $500,000 policy cap and the most she could have settled for would have been $424,255." Ibid.
Although the latter observation in Otto seems to have influenced the conclusion in Knox, supra, 304 N.J.Super. at 436, 701 A.2d 445, we are constrained to note that the statement is only dictum because Otto was not concerned with the legislative intent behind either N.J.S.A. 39:6A-4.3(c) or N.J.S.A. 39:6A-9.1. Rather, it simply dealt with the interpretation of an insurance contract provision.
Moreover, Frazier, supra, arose under a provision of the workers' compensation statute, N.J.S.A. 34:15-40(c), which explicitly provides that reimbursement of the insurance carrier is allowed even if the employee is not fully compensated by the third-party funds.
While we thus agree with plaintiff that Otto and Frazier do not furnish a strong underpinning for the Knox decisional rationale, we are unable to agree with her contention that broad support for her contentions is provided by Pa. Mfrs. Ass'n Ins. Co. v. Gov't Employees Ins. Co. (GEICO), supra. Indeed, while plaintiff describes Pa. Mfrs. as being directly on point with her factual situation, it is not. The insurer in Pa. Mfrs. did not obtain reimbursement of PIP expenditures prior to settlement of the insured's claim. Rather, *570 the insurer sought a declaratory judgment to determine its right of subrogation against the tortfeasor's carrier. Id. at 496, 347 A.2d 5. The court was ultimately responsible for dividing the amount available under the policy limit and decided that it should be paid in preference to the insured. Id. at 499, 347 A.2d 5. If in this matter the parties had approached the court prior to the arbitration award, with the entire liability limit available, the same result might have ensued.
Moreover, the court did not determine that the PIP carrier was responsible for compensating the injured party for this loss but that the tortfeasor's insurance carrier would be responsible for the loss for foolishly having volunteered payment before the injury claim was resolved. Id. at 500, 347 A.2d 5. Thus, the court in Pa. Mfrs. plainly did not decide a case in which the tortfeasor's carrier is compelled to engage in arbitration which results in a binding order to pay the PIP reimbursement. Consequently, the reasoning of that case is not directly applicable to the situation of plaintiff here.[3] In short, we find plaintiff's reliance on Pa. Mfrs. an insufficient basis for repudiating Knox.
We next address State Farm, supra, which, though not cited by plaintiff until during oral argument, after we referred to it, should be noted in the present context. The Court in State Farm, under N.J.S.A. 39:6A-9.1, held that an insurance carrier could recover PIP benefits from a tavern which negligently served alcohol to an intoxicated patron who injured the carrier's insured. Id. at 3-4, 679 A.2d 620.
The Court noted that in adopting the No-Fault Act, the Legislature intended to provide a system of promptly compensating injured motorists and to generate "[s]ubstantial savings to insurers and the public" through the elimination of intercompany litigation. Id. at 6, 679 A.2d 620 (citing Garden State Fire & Cas. Co. v. Commercial Union Ins. Co., 176 N.J.Super. 301, 305, 422 A.2d 1327 (App.Div. 1980)). This system had replaced the mechanism in effect before the No-Fault Act, in which "insurers were free to file suit against other insurers to recover payments for medical expenses based upon the common-law right of subrogation." Id. at 6, 679 A.2d 620. "Subrogation was disfavored eventually because `it merely shifted money and paper among insurance companies at additional administrative expense.' " Id. at 7, 679 A.2d 620 (quoting James W. Kerwin, Survey of Insurance Law, 31 Rutgers L.Rev. 519, 542 (1978)).
The Court noted that after N.J.S.A. 39:6A-9 lapsed by its terms in 1974, insurers no longer had the right to recover PIP reimbursement from the tortfeasor and that Aetna Ins. Co. v. Gilchrist Bros., Inc., supra, 85 N.J. at 560-61, 428 A.2d 1254, was the first case to recognize that the right to PIP recovery had lapsed. Id. at 7-8, 679 A.2d 620.
Justice Coleman observed in State Farm that
[t]he Legislature responded [to Aetna] fewer than three years later by enacting N.J.S.A. 39:6A-9.1 under the "New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984," L. 1983, c. 362 (1984 *571 Act), effective October 4, 1983. Section 9.1 granted limited rights of reimbursement to PIP carriers. Rather than reviving the difficulties of subrogation previously identified in Cirelli [v. Ohio Cas. Ins. Co., 72 N.J. 380 [371 A.2d 17] (1977) ] and Aetna, section 9.1 provided for a new right of reimbursement that was primary and not linked to any purported subrogation right. The legislative intent behind this statute was to alleviate the imbalance identified by Justice Sullivan[`s dissent in Aetna ] by reducing the cost of insurance for automobile owners and allowing automobile insurers to recover PIP through reimbursement.
[Id. at 9, 679 A.2d 620 (citations omitted).]
Accordingly, the Court affirmed that the purpose of N.J.S.A. 39:6A-9.1 was to create a primary right of reimbursement in the injured party's insurer, a right that could be asserted directly against the insurer of a tortfeasor who was not required to maintain PIP coverage or a tortfeasor who wilfully failed to carry PIP coverage. Id. at 10, 679 A.2d 620. Concluding that N.J.S.A. 39:6A-9.1 was intended to provide broad rights, the Court stated:
As expressed by then-Governor Kean, the purpose of the 1984 Act was to bring about long sought after reductions in premiums for New Jersey motorists. The 1984 Act contained various provisions intended to reduce the premiums paid by owners of private-passenger vehicles[.]
Section 9.1's right of reimbursement must be understood in the context of the 1984 Act's primary purpose of reducing the cost of insuring private-passenger vehicles[.] Allowing PIP reimbursement suits to go forward would not delay injured parties' receipt of PIP benefits, but would enable PIP carriers to pass on PIP costs to the parties responsible for the injuries.
[Id. at 14, 679 A.2d 620 (quotations and citations omitted).]
This recourse, permitting a PIP carrier to seek reimbursement under Section 9.1 from all tortfeasors not subject to the No-Fault Act, was held to be a broad one that obligated the tavern at issue in the case to make reimbursement to the PIP carrier. Id. at 15, 679 A.2d 620.
Although plaintiff did not rely on State Farm, and although that case concerned which classes of tortfeasors were properly objects of a PIP reimbursement claim, rather than the timing of such a claim, the case is significant because it accorded little weight to earlier interpretations of N.J.S.A. 39:6A-9 but also required an expansive interpretation of N.J.S.A. 39:6A-9.1. The rights of a PIP carrier under the statute must be broadly read in order to effectuate the Legislature's purpose of reducing automobile insurance premiums. Id. at 14, 679 A.2d 620.
We also note the relevance of our decision in IFA Ins. Co. v. Waitt, 270 N.J.Super. 621, 637 A.2d 941 (App.Div.), certif. denied, 136 N.J. 295, 642 A.2d 1004 (1994). Although commentary in Cynthia M. Craig & Daniel J. Pomeroy, New Jersey Auto Insurance Law § 14.3 at 230 (Gann 2003), suggests that IFA is contrary to Knox because it gives preference to recovery by the injured insured rather than by the PIP carrier, the facts of IFA differ from those of Knox, and are actually much more analogous to those of Pa. Mfrs. In IFA, more than $30,000 in PIP benefits was paid to an accident victim by his insurer. 270 N.J.Super. at 622, 637 A.2d 941. The insured, after bringing a personal injury action against the tortfeasor's insurer, was awarded the policy limit of $75,000. Ibid. The PIP carrier then filed a claim against the tortfeasor's insurer for reimbursement *572 pursuant to N.J.S.A. 39:6A-9.1. Ibid. The trial court held that the PIP carrier could receive no reimbursement because the policy limit was exhausted. Id. at 623, 637 A.2d 941.
We affirmed, reasoning that after exhaustion of the liability policy limits, N.J.S.A. 39:6A-9.1 does not require the tortfeasor's carrier to reimburse the PIP carrier where there is no excess policy. Id. at 626, 637 A.2d 941. In reaching this conclusion, the court cited Pa. Mfrs. Ass'n Ins. Co. v. Gov't Employees Ins. Co., supra, 136 N.J.Super. at 496-98, 347 A.2d 5, for the proposition that an insurer can receive no more in subrogation than the liability limits of the policy. IFA, supra, 270 N.J.Super. at 625-26, 637 A.2d 941. The court then declined to expand the scope of N.J.S.A. 39:6A-9.1 to allow for recovery of PIP expenditures which exceeded the policy limits. Id. at 626, 637 A.2d 941. It also relied upon cases addressing N.J.S.A. 39:6A-9 when interpreting N.J.S.A. 39:6A-9.1. IFA did not hold, however, that the injured insured's claim had primacy over that of the PIP carrier. Just as occurred in Pa. Mfrs., the injured insured's claim had been resolved when the PIP carrier sought reimbursement. Although IFA takes a more conservative approach to interpreting N.J.S.A. 39:6A-9.1 than does Knox, the two decisions are not irreconcilable.
We do not find particularly instructive, in attempting to address the issue of statutory interpretation, plaintiff's arguments concerning generally the fiduciary obligations of insurers or the law of subrogation. These general principles are of no particular aid in construing the statute before us. As the foregoing discussion of the history of N.J.S.A. 39:6A-9.1 and predecessor provisions suggests, the present system of statutory reimbursement of a carrier's PIP payments replaced the old subrogation mechanism. Moreover, plaintiff's contentions that Knox enables the PIP carrier to reap a windfall to some extent begs the question, which is one of statutory interpretation. If a fair reading of the language of the statute indeed allows the recovery which Knox has declared it does, then the recovery is not a windfall but a statutorily-permitted reimbursement.
In addition, while on one hand the Otto and Frazier cases are perhaps slender reeds upon which to lean as support for Knox, in that they furnish only minimal support for that holding because they involved the application of particular statutes not before the court in Knox, on the other hand the Pa. Mfrs. decision relied on by plaintiff furnishes no convincing support for plaintiff's position, and the State Farm decision not cited by plaintiff until after we referred to it during oral argument can be read to suggest that Knox has a sounder analytical underpinning than plaintiff has acknowledged. In our view, plaintiff has not shown that we were clearly wrong in deciding Knox. The decision may be subject to some criticism, but it is one that could legitimately have been reached. On the other hand, the result advocated for by plaintiff also cannot be said to be clearly wrong, and it appears that Knox clearly could have gone the other way.
To be sure, plaintiff's appeal regarding the PIP carrier's right to seek reimbursement has raised several interesting legal issues. In the circumstances, however, it is evident that this appeal is affected as much by an institutional issue as it is by a legal one. We decide cases by panels, not en banc, and the decisions of one panel of the Appellate Division are not binding upon the remaining panels. Pressler, Current N.J. Court Rules, comment 3 on R. 1:36-3 (2003).
*573 Thus, if we disagree with Knox we are not required to follow it. On the other hand, there are institutional reasons why a court might not depart from precedent even if, faced with an issue for the first time, it would have reached a different result. See Smith v. Brennan, 31 N.J. 353, 361, 157 A.2d 497 (1960) (holding an infant plaintiff could recover for prenatal injuries, and overruling a contrary decision, the Court explained stare decisis creates "certainty and stability" and "applies primarily to decisions ... which invite reliance and on the basis of which men order their affairs[.]"). Indeed, even though his opinion in Watson v. U.S. Rubber Co., 24 N.J. 598, 603, 133 A.2d 328 (1957), concluded that the Court should overrule its decision in Glover v. Simmons Co., 17 N.J. 313, 111 A.2d 404 (1955), it is useful to consider the instructive observation by Justice Jacobs that "[t]o the extent that the principle of stare decisis affords a measure of stability it is of great social value." Moreover in Namm v. Charles E. Frosst & Co., 178 N.J.Super. 19, 35, 427 A.2d 1121 (App.Div.1981), we declined to adopt an enterprise theory of liability advanced in a DES class action suit, concluding that "[e]xtensive policy shifts of this magnitude should not be initiated by an intermediate appellate court. The appropriate tribunal to accomplish such drastic changes is either the Supreme Court or the Legislature." See also Cynthia M. Craig & Daniel J. Pomeroy, New Jersey Auto Insurance Law § 14.3 at 230 (Gann 2003) (stating of the apparent conflict in the Appellate Division over which claims have primacy for PIP reimbursement, "[r]esolution of this controversy by the Supreme Court or the Legislature seems appropriate.")[4]
When we consider, from the perspective just mentioned, the reasons urged on us by plaintiff to repudiate Knox, we see no compelling reason to take that course. We also note that more than five years have passed since Knox was decided in September 1997. This has provided time, though not a lengthy period, for the Legislature to amend the statute if it disagreed with our decision in that case. The response from the Legislature, however, has been silence. It has not amended the statute. The Legislature is presumed to know the law. "It is assumed that the Legislature is `thoroughly conversant with its own legislation and the judicial construction of its statutes.'" Ayres v. Dauchert, 130 N.J.Super. 522, 528, 328 A.2d 1 (App.Div.1974), citing Brewer v. Porch, 53 N.J. 167, 249 A.2d 388 (1969). In Ayres, we concluded that by proposing an amendment to a statute four months after a case was decided on that point, the Legislature "clearly intended to express its displeasure with and correct the result of" that case. Id. at 529, 328 A.2d 1. The Supreme Court, in Brewer also recognized that "[t]he long acquiescence of the Legislature in [a particular] judicial construction further emphasizes the conclusion that such construction was consistent with and expressive of legislative intent." 53 N.J. at 179, 249 A.2d 388.
Finally, while, from the perspective of a policyholder affected by the Knox result, that decision might seem anomalous in a *574 jurisdiction that for decades has worked to achieve an automobile insurance system that would deliver affordable insurance on an efficient basis, we must not inappropriately disregard the passage in Knox declaring that "the possibility that PIP reimbursement may be charged against the tortfeasor's liability coverage is a fair trade-off" for the "Act[`s] require[ment]... [that] the injured motorist's medical expenses ... be paid up-front by the PIP carrier without regard to the motorist's fault even before there has been a determination of ultimate liability for the accident[.]" 304 N.J.Super. at 437, 701 A.2d 445 (emphasis added). Despite plaintiff's urgings, in our view the Knox observations about a "fair trade-off" have continued persuasiveness and vitality. As Knox explained, this "trade-off" "afford[s] the injured motorist a prompt measure of relief not available were he/she relegated to a conventional common-law negligence action." Ibid. Knox thus perceived in the mechanism set forth in the underlying legislation a convincing rationale for allowing the PIP insurer to obtain such recovery, and this is a further basis on which we decline to repudiate that decision.
We are satisfied, ultimately, that the rule in Knox has not been shown by plaintiff to be clearly wrong, that we should not depart from it, and that it was correctly applied by the trial judge here.

II
We turn now to plaintiff's contention that CNA's counsel fee award in arbitration should not be used to reduce her recovery from GEICO. CNA claimed attorneys fees of $14,302.12, which is thirty-three and one-third percent of the $42,906.36 total of CNA's claimed medical payments and essential service benefits.
In our view, N.J.S.A. 39:6A-9.1 does not authorize recovery of attorneys fees in PIP reimbursement arbitration proceedings.[5] In examining earlier cases respecting PIP claims brought pursuant to N.J.S.A. 39:6A-9.1, we find no mention of attorneys fees. See, e.g., Knox v. Lincoln Gen. Ins. Co., supra, 304 N.J.Super. at 434, 701 A.2d 445. Indeed, the statute itself, N.J.S.A. 39:6A-9.1, does not specifically use the term "attorneys fees," but instead allows for the recovery of costs of "enforcing rights."
We examined a regulation[6] providing for the award of counsel fees under N.J.S.A. 39:6A-5.2(g), a statute concerning mandatory arbitration of PIP benefits in disputes between insurers and insureds, in N.J. Coalition of Health Care Professionals, Inc. v. Dept. of Banking and Ins., 323 N.J.Super. 207, 260-62, 732 A.2d 1063 (App.Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). Under N.J.S.A. 39:6A-5.2(g), "[t]he cost of proceedings [regarding the recovery of PIP benefits] shall be apportioned by the dispute resolution professional. Fees shall be determined to be reasonable if they are consonant with the amount of the award, in accordance with a schedule established by the New Jersey Supreme Court[.]"
In Health Care Professionals, supra, we examined whether counsel fees could be recovered by an insurer against an insured in a dispute resolution proceeding and *575 whether the regulation allowing for the recovery of counsel fees was consistent with N.J.S.A. 39:6A-5.2(g). 323 N.J.Super. at 260-61, 732 A.2d 1063. Noting that the terms "counsel fees" and "attorneys fees" were not used in the statute, we observed that while N.J.S.A. 39:6A-5.2(g) requires that the costs of the dispute resolution proceeding be apportioned, it "does not speak to attorneys fees." Id. at 262-63, 732 A.2d 1063.
Moreover, having reviewed examples of statutes under which awards of attorneys fees were expressly authorized, we stated that "[i]n the past, when the Legislature intended to authorize an award of attorney's fees it has expressly and clearly done so." Id. at 263, 732 A.2d 1063. Thus, inasmuch as N.J.S.A. 39:6A-5.2(g) did not explicitly refer to attorneys fees, we concluded that the regulation allowing for the award of attorneys fees was "an invalid expression of legislative intent[.]" Id. at 264, 732 A.2d 1063.
To be sure, Health Care Professionals dealt with N.J.S.A. 39:6A-5.2(g) rather than N.J.S.A. 39:6A-9.1, but both statutes are part of the No-Fault Act and both concern compelled arbitration to resolve PIP recovery claims. As is the case under N.J.S.A. 39:6A-5.2(g), N.J.S.A. 39:6A-9.1 does not expressly provide for the recovery of attorneys fees. It also does not employ the terms "attorneys fees" or "counsel fees." It only refers to the costs of processing benefit claims and enforcing rights.
We are persuaded that our approach in Health Care Professionals with respect to N.J.S.A. 39:6A-5:2(g) should apply as well to N.J.S.A. 39:6A-9.1 and that while the latter statute may allow recovery of costs of the arbitration process itself, it does not authorize recovery of attorney's fees or counsel fees.
Our concern here, as it was in Health Care Professionals, is that if we were to interpret the statute to allow the successful party to recover attorneys fees, it would, in many cases, expose the injured insured to payment of counsel fees of an insurer in a statutorily prescribed arbitration, independent of reducing the insured's ability to collect from the tortfeasor. See 323 N.J.Super. at 263, 732 A.2d 1063. The same result would occur if N.J.S.A. 39:6A-9.1 is interpreted as allowing the award of attorneys fees. Under Knox, supra, 304 N.J.Super. at 431, 701 A.2d 445, an insurer may proceed with a PIP recovery claim, without notice to its insured, even if doing so reduces the funds available to compensate the insured.
In situations where the value of the insured's claim exceeds the remaining policy limits, the insured's recovery will be reduced by the arbitration award. If the arbitration award includes attorneys fees, the insured will, in effect, be burdened with their payment. Unlike the scenario contemplated under N.J.S.A. 39:6A-5.2, which was at issue in Health Care Professionals, where the insured is at least a party to the PIP recovery proceedings and arguably bears some responsibility for the dispute, under N.J.S.A. 39:6A-9.1, the insured is not a party to the PIP recovery proceedings, may not even receive prior notice thereof, and bears no responsibility for the inability of the involved insurance carriers to reach agreement on PIP reimbursement. We conclude in these circumstances that to expose the insured to payment of his or her insurance carrier's attorneys fees is even more unfair than it would have been in Health Care Professionals.
Because the Legislature did not intend that attorneys fees be awarded pursuant to N.J.S.A. 39:6A-9.1, the award of attorneys fees in this case was beyond the arbitrator's *576 statutory authority. Plaintiff is confronted, however, by the principle that an arbitration award cannot be set aside due to errors of law or fact made by the arbitrators. Allstate Ins. Co. v. Universal Underwriters Ins. Co., 330 N.J.Super. 628, 633, 750 A.2d 223 (App.Div.2000). N.J.S.A. 2A:24-9(b) allows the court to modify or correct an award "[w]here the arbitrators awarded upon a matter not submitted to them unless it affects the merit of the decision upon the matter submitted[,]" but attorneys fees was an issue submitted to the arbitrator by CNA.
On at least two occasions, we have interpreted N.J.S.A. 2A:24-9(b) to permit the modification of an arbitration award that exceeds the "scope of the arbitrator's authority." Gen. Accident Ins. Co. v. Poller, 321 N.J.Super. 252, 255-56, 728 A.2d 845 (App.Div.), certif. denied, 162 N.J. 132, 741 A.2d 99 (1999); Habick v. Liberty Mut. Fire Ins., supra, 320 N.J.Super. 244, 252-54, 727 A.2d 51 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999). In Habick, however, we found that the specific finding at issue had not been submitted for arbitration. 320 N.J.Super. at 254, 727 A.2d 51. This is not the case with respect to CNA's attorney fee award in this matter. Thus, we are reluctant to set aside the portion of the arbitration award representing attorneys fees on the sole ground that the award exceeded the arbitrator's authority under N.J.S.A. 39:6A-9.1, because this might improvidently expand the language of N.J.S.A. 2A:24-9(b).
While we do not undercut the award itself, in view of N.J.S.A. 2A:24-9(b), it is beyond legitimate dispute that plaintiff, as a nonparty to the arbitration, should be able to maintain a claim against one or both of the insurance carriers which proceeded to obtain the arbitration award without prior notice to her, for any assets wrongfully distributed pursuant to the arbitration award. The question is, then, which insurance carrier must bear the risk of an erroneous arbitration award.
Plaintiff argues that CNA should compensate her for monies erroneously awarded as attorneys fees under a theory of unjust enrichment. This argument, if reasonable on its face, presents some practical problems. The attorney who represented CNA in the arbitration proceeding was apparently hired specifically for that purpose and did not represent CNA on a regular basis. He is not a party to this matter, and a remand to review his billing records would thus be somewhat impracticable. Balanced against those considerations, however, is the point that holding the insured's carrier liable for mistakes as to counsel fee awards would help to ensure that such mistakes are not repeated in the future.
The tortfeasor's insurerin this case GEICOshares a privity of interest with plaintiff in seeing that the assets of the tortfeasor's policy are not wrongfully dissipated. Indeed, it is this privity of interest which justifies arbitration of the PIP claim without notice to plaintiff. Rutgers Cas. Ins. Co. v. Dickerson, 215 N.J.Super. 116, 121-22, 521 A.2d 373 (App.Div.1987). As explained at length in Pa. Mfrs., supra, 136 N.J.Super. at 499-500, 347 A.2d 5, the tortfeasor's insurer has a primary obligation to the injured party and if it mistakenly pays out funds which reduce the compensation available to the injured party, "[i]t must absorb the loss caused by its folly."
Additionally, while GEICO had the opportunity to do so, it failed to oppose CNA's request for attorneys fees and challenge the calculation of the award. Records from the arbitration hearing indicate that while CNA made a personal appearance at the hearing, GEICO did not. Holding the tortfeasor's insurance company *577 responsible in these circumstances would have the purpose of ensuring that in the future, the interests of injured parties will be represented at arbitration proceedings conducted pursuant to N.J.S.A. 39:6A-9.1. For that reason, plaintiff has a right of recourse for the erroneous arbitration award, although her claim should not be exclusively against GEICO. Indeed, because plaintiff executed a general release of GEICO in this matter, recovery from GEICO on this claim may be impossible. While CNA has prevailed on its attorneys fee claim, however, plaintiff was not privy to that proceedinga result that CNA helped to guarantee by not giving plaintiff advance notice thereof. We see no reason why plaintiff should in these circumstances be precluded from recovering from CNA the attorneys fees that CNA obtained without notice that were not authorized by statute.
In sum, because N.J.S.A. 39:6A-9.1 does not explicitly provide for the award of counsel fees, the arbitrator erred in awarding them to CNA. Plaintiff, a nonparty to the arbitration, should not be bound by the erroneous award. She may have had a cause of action for the wrongful dissipation of the policy coverage against GEICO, which she has released from the litigation. But her claim against CNA was not released, and the trial court's dismissal of plaintiff's claim based upon the attorneys fee award was erroneous.

III
Plaintiff further asserts that, assuming the court was correct in dismissing her claims respecting PIP reimbursement and attorneys fees, it nevertheless erred when it dismissed her UIM claim. According to plaintiff, her recovery is $242,791.58, her UIM coverage limit is $250,000, and she is entitled to recover the difference under her UIM policy. She contends, moreover, that she provided CNA with adequate notice of her UIM claim under Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div. 1988).
We disagree. Gaerner's liability coverage limit was $300/300,000. Plaintiff's UIM coverage limit was $250/500,000. Because Gaerner's per person liability limit was greater than plaintiff's per person UIM limit, Gaerner was not an underinsured motorist as defined by N.J.S.A. 17:28-1.1(e). Under Tyler v. N.J. Auto. Full Ins. Underwriting Ass'n, 228 N.J.Super. 463, 466, 550 A.2d 168 (App.Div.1988), plaintiff is precluded from pursuing her UIM claim. Tyler involved a tortfeasor's insurer's offer to pay the limits of its liability coverage to settle the claims of four members of the Tyler family injured in an automobile accident with the insured tortfeasor. Id. at 465, 550 A.2d 168. When the proceeds were distributed, however, two of the Tylers received less than their per person UIM coverage limit. Ibid. We held that the UIM policy did not cover this shortfall, referring to N.J.S.A. 17:28-1.1(e),[7] which defines an "underinsured vehicle":

*578 [t]he plain meaning of the statute is that underinsured motorist benefits are available if (and to the extent that) the tortfeasor's liability limits are lower than the limits of the underinsured motorist coverage contained in the plaintiffs' policy. Here, the tortfeasor's liability limits were $25/50,000 while plaintiffs' underinsured motorist limits were $15/30,000. For that reason, plaintiffs' underinsured motorist coverage did not apply.
The statute produces the same result if there is one injured claimant or many, or if the amount of damages exceed the tortfeasor's liability limits, or even if multiple claims against one tortfeasor are, because of his liability limits, settled for amounts which are individually less than the underinsured motorist coverage available from the claimants' policy. A tortfeasor is not underinsured relative to plaintiffs' damages, or relative to the judgment or judgments against him, but rather relative to the limits of the underinsured motorist coverage purchased by or for the person seeking recovery.

[Id. at 466, 550 A.2d 168.]
As we further explained, "[a] necessary corollary of the ruling [in Longworth, supra] is that there is no recovery at all from the underinsured motorist coverage unless it has higher limits than the liability coverage." Id. at 466-67, 550 A.2d 168.
Moreover, Knox, 304 N.J.Super. at 437, 701 A.2d 445, provides no support for plaintiff's assertion that UIM coverage is available whenever liability coverage is reduced to an amount lower than the UIM coverage. In fact, UIM claims were not at issue in Knox and it was unknown whether the decedent's UIM policy limits exceeded the tortfeasor's liability coverage limits. Id. at 434-37, 701 A.2d 445. The court's observation in Knox that "[r]ecovery may be sought under the underinsured motorist coverage of the tortfeasor's policy"[8] (id. at 437, 701 A.2d 445) was not a conclusion as to the respective policy limits as required by Tyler, supra, 228 N.J.Super. at 466, 550 A.2d 168. Because in this case Gaerner, the alleged tortfeasor, had policy limits in excess of those of plaintiff's policy, the trial court correctly dismissed her UIM claim.

IV
Finally, plaintiff contends that the trial court should have denied CNA's motion for summary judgment because of alleged discovery violations by CNA. She had requested discovery that she argues was "potentially beneficial," particularly as to amounts CNA paid in PIP benefits over the last several years and moneys it had recovered in the same period under N.J.S.A. 39:6A-9.1. She claims that this information pertained to her efforts to show that CNA's recovery of PIP expenditures in this case was a windfall. The information sought, she asserts, is also pertinent to her UIM claim.
While the trial court made no findings as to the alleged discovery violations, it rejected that argument implicitly when it dismissed the complaint. In our view, the discovery sought by plaintiff was not capable of creating a genuine issue of material fact in this case. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). As we have noted, the issue of whether CNA's recovery of PIP *579 expenses represented a windfall is not the focal point, which is the appropriate construction of N.J.S.A. 39:6A-9.1. Moreover, plaintiff's UIM policy limit was less than Gaerner's liability policy limit, and she is not entitled to recover on her UIM policy as a matter of law. In short, we find that the discovery issue was not an obstacle to summary judgment here.

V
To summarize, we affirm in part and modify in part the orders appealed from as follows: we affirm the orders appealed from, including the trial court's dismissal of the complaint on summary judgment in favor of CNA, except with respect to the extent it would deny recovery from the PIP carrier under N.J.S.A. 39:6A-9.1 of CNA's attorneys' fees and costs incurred in connection with the arbitration, and we direct the trial court to enter a modified order directing CNA to pay those fees and costs to plaintiff.
NOTES
[1] As a New York resident, Gaerner was not required to maintain PIP coverage. We explain below that CNA's claim for reimbursement from GEICO thus arose under the language of N.J.S.A. 39:6A-9.1, which provides a right of recovery "from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection ... coverage ... under the laws of this State[.]"
[2] Although it was in effect at the time of Otto's accident, N.J.S.A. 39:6A-4.3(c) was subsequently repealed in 1988 by L. 1988, c. 119. Id. at 179 n. 1, 650 A.2d 832.
[3] Pa. Mfrs. addressed a predecessor of the current PIP recovery statute. Plaintiff argues that this distinction is not important because N.J.S.A. 39:6A-9 and N.J.S.A. 39:6A-9.1 are essentially identical provisions that function in the same way; see Aetna Ins. Co. v. Gilchrist Bros., Inc., supra, 85 N.J. at 567, 428 A.2d 1254 (holding that although N.J.S.A. 39:6A-9 uses the word "subrogation" it really creates a direct right of recovery for the insurer). This argument, however, ignores the distinct legislative histories of these respective provisions.
[4] Judge Stern was on the panel that decided Knox. He would adhere to its holding in the absence of any amendment to N.J.S.A. 39:6A-9.1, as part of the Automobile Insurance Cost Reduction Act of 1998 or otherwise, in the five and one-half years since Knox was decided. He nevertheless recognizes the obligation of his colleagues to consider the statutory issue for the first time, and joins the opinion of the court. See Hellwig v. J.F. Rast & Co., 215 N.J.Super. 247, 254-55, 521 A.2d 896 (App.Div.) (Stern, J.A.D., concurring), aff'd, 110 N.J. 37, 538 A.2d 1243 (1988).
[5] While plaintiff does not directly raise this argument before us, at the hearing before the trial judge she questioned whether attorneys fees were available to CNA under the statute. We raised the point at the argument before us and we address it in the interest of justice.
[6] The regulation at issue was N.J.A.C. 11:3-5.6(d)(3), known as the "loser-pays" provision. No regulation in the current code addresses the availability of attorneys fees pursuant to N.J.S.A. 39:6A-9.1.
[7] N.J.S.A. 17:28-1.1(e) provides, in relevant part:

"underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle.... A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.
In a minor change that is not relevant here, N.J.S.A. 17:28-1.1(e) as in effect when Tyler was decided was amended in 1998 to add the word "operation" to "ownership, maintenance or use of an underinsured motor vehicle." L. 1998, c. 21, § 71.
[8] This statement by the court seems to be mistaken, because it is the injured insured's UIM policy that would be liable for an underinsured tortfeasornot the tortfeasor's insurer.